UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            Case No. 22-CR-20504

vs.                                           Hon. Denise Page Hood

AWS MOHAMMED NASER,

        Defendant.

_____/

## REPLY ON MOTION TO AMEND PROTECTIVE ORDER

The Defendant in this case is looking for one thing: publicity. He wants to use the discovery in this case not to assist his attorneys in defending him in court but to make a documentary. He has repeatedly said so himself. A more robust protective order is the only way to keep this case from turning into a public spectacle showcasing sensitive law enforcement sources and methods.

The existing protective order has been a failure from the start. Defense counsel agreed in the order to "obtain a signed statement from [the defendant, among others] indicating their agreement to abide by the terms and conditions of this order and provide copies of those statements to the United States." [R. 18: Protective Order, PageID 41]. Defense counsel never obtained such a statement and Defendant now refuses to sign one.

Nevertheless, the United States provided discovery to the Defense. Among those documents were sealed court records. The Government should have marked

1

those records as sensitive.[1] But the Defense also should not have shared them with the Defendant without his signed agreement to abide by the protective order. The Defendant gleefully shared information from the document with a podcaster and Intercept journalist Trevor Aaronson (the "Journalist") and responded to the Journalist's requests for more information from the document.

Regardless of who bears or shares the blame for the initial disclosure of sealed information, the Defendant has made clear that he will continue sharing as much information as he can get his hands on with the Journalist. He plans to do it through his brother:

> I'm gonna release that discovery that I have and the discovery that [Defense Counsel] have to my brother. That way you can have access to it. Obviously there's a lot of personal information in there and things like that, but I'm sure you'll do due diligence with that, you know.

[March 1, 2023 call between Defendant and Journalist at 04:40–04:57.] There is no defense-related reason for his disclosure of these documents, which relate to a sealed criminal prosecution of a third party in a different district.

In March, the Government raised the issue of these disclosures to Defense Counsel, who discussed them with Naser. By March 23, 2023, the Defendant was aware of the issue and mentioned it to the Journalist on a call. [March 23, 2023 call between Defendant and Journalist at 05:20-06:20.] The Defendant stated that he did

---

[1] The Defense in its response at once faults the Government for not marking this document as sensitive [Response at 3] and accuses the Government of marking too many documents as sensitive [Response at 5–6].

2

not sign the protective order and does not intend to. [Id. at 06:20-06:26.] He insisted that he will talk to whomever he wants to and share his discovery at will. [Id. at 12:10-12:20.]

The Defendant has explained why he wants to share his discovery with the Journalist. It is not to help him at trial. It is to make his case outside the courtroom: "I'm gonna do this story, you know. I'm gonna do this documentary and . . . the American people are gonna see all of this." [April 7, 2023 call between Defendant and Journalist: 07:54–08:04.] Defendant has become obsessed with getting public attention:

> I just want all of my discovery. That's what I want. . . . my whole case is in my discovery. I don't care what these people do as long as they give me all my discovery so I can share it so I can make my documentary, you know. That's all I want.

[Id. at 9:30–9:50.] The Government is required to provide discovery in order for the Defendant to be able to have a fair trial, not so that he could publish the information and have his trial in the media.

But that publicity is what Defendant is after. It matters more to him than winning his case. When the Journalist suggests that the Government may drop the case against him, Defendant responds:

> I will object to them dropping the case. Like I'm willing to go to that far. Your Honor, no, I object to them dropping the case, give me the discovery first. It's like you gotta understand this is my battle I need this stuff, you know, especially to help you tell the story.

3

[Id. at 11:43–12:00.] He does not consider a trial to be his "battle" because there are no cameras permitted in federal court. His "battle" is a public relations fight he wants to have with the FBI and the Federal Government, and the discovery is his weapon.

The First Amendment does not permit this. "[T]rial courts have 'an affirmative constitutional duty' to minimize the potential for prejudicial pretrial publicity." *United States v. Koubriti*, 307 F. Supp. 2d 891, 897 (E.D. Mich. 2004)(citing *Gannett Co. v. DePasquale*, 443 U.S. 368 (1979)). The Journalist whom Defendant is in contact with has already put out a podcast about a key figure in this case. A follow-up documentary focused on Defendant is likely to create prejudice against one or both parties. "In furtherance of its duty to ensure fairness and impartiality to all parties to a criminal action, a court may impose reasonable First Amendment restraints upon all parties to the litigation." *Koubriti*, 307 F. Supp. 2d at 898 (citing *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1072–73 (1965)). The proposed amended protective order is a reasonable restraint to prevent Defendant from trying his case in the media. It does not preclude Defendant from discussing his case, his opinions, or any open court events with the media.[2] It does not silence the media in any way. It merely keeps the discovery information, including sealed documents, witness information, and sensitive law enforcement sources and methods, out of the public eye.

---

[2] The Defense claims that the Government's view of the protective order would mean "Mr Naser could not talk about his own emails." [Response at 6.] Not so. It merely prevents him from sharing what sources and methods the Government may have used in order to obtain those emails.

4

The discovery in this case is voluminous and comes from a long investigation. In addition to sealed documents, it includes the information on confidential informants, surveillance, undercover work, and sophisticated law enforcement techniques. The publication of this material will not only engender potentially prejudicial pretrial pubicity, but will also give future terrorism suspects a roadmap for avoiding law enforcement scrutiny. The amended protective order is both reasonable and necessary.

Defendant's Response claims that the proposed amended protective order would hobble the Defense's ability to litigate the case, and suggests that it this dispute is a Government delaying tactic. [Response at 7.] But the Defendant has shown no interest in using the discovery to help his legal team litigate this case. He has repeatedly insisted on starting trial before his legal team even had the chance to receive and review all the discovery. He studies the discovery not to work on his defense, but "exclusively for [the Journalist], buddy." [March 2, 2023 call between Defendant and Journalist at 01:29-01:35.] He needs the discovery not to help his lawyers, but "so I can do my documentary, you know what I'm saying?" [April 3, 2023 call between Defendant and his brother at 13:38, translated from Arabic by FBI linguists.] He does not see the discovery as potential evidence to be used in court but as something that "will give the documentary more credibility. . . . I can actually show the American public what these people were actually doing." [Id.] Adopting the proposed amended protective order is more likely to speed defense's preparation by

5

ending Defendant's quest to publish the discovery and refocusing him on helping his legal team in court. This Court should reestablish the "smooth functioning of the discovery process" by keeping the discovery in this case from the public and the press. *See United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986).

## CONCLUSION

For the foregoing reasons, the United States asks this Court to amend the Protective Order issued on December 22, 2022 (ECF 18 PgID.37) to prohibit the disclosure and dissemination of all of the Government's discovery materials to members of the public or media, as further specified in the Government's Motion.

Respectfully submitted,

DAWN N. ISON
United States Attorney


*/s/Saima S. Mohsin*
SAIMA S. MOHSIN
Assistant United States Attorney

*/s/Dmitriy Slavin*
DMITRIY SLAVIN
Trial Attorney
National Security Division

Date: April 27, 2023