UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,      Case No. 22-CR-20504

vs.             Hon. Jonathan J.C. Grey

AWS MOHAMMED NASER,

    Defendant.
_____/

**UNITED STATES'S REPLY BRIEF
REGARDING REQUESTS FOR ADDITIONAL
TIME**

Defendant's motion to suppress evidence derived from the Foreign Intelligence Surveillance Act ("FISA") (ECF No. 73)—filed on September 19, 2023—comes nearly a year after his indictment in this case, and nearly nine months after the United States filed a notice of intent to use FISA-derived evidence. ECF No. 24. Although Defendant's motion is short and in many respects boilerplate in nature, it triggers the review procedures codified in 50 U.S.C. §§ 1801 *et seq.* and requires an extensive response by the United States.

The United States' reasonable and routine request for additional time to respond is not a surprise. In addition to alerting counsel of the time associated

with litigating the FISA suppression motion in court on several occasions, the Government highlighted this very issue in its December 21, 2022, motion seeking an order designating the case as a complex case. In that motion, the United States explained:

> The Government submits that this case is a complex case within the meaning of § 3161(h)(7)(B)(ii) due to the nature of the prosecution and complexity of the anticipated litigation, including potential litigation arising from the use of FISA-derived evidence, delay associated with the review of classified information and potential motions filed pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III, the need for several expert witnesses to review the evidence, the time needed to review and translate Arabic-language materials, and the time needed to review a large volume of discovery materials. Therefore, it is unreasonable to expect adequate preparation for pre-trial proceedings and trial within the time limits of the Speedy Trial Act.

ECF No. 25, PageID.71-72.

The United States contemporaneously filed a notice of intent to use FISA-derived evidenced (ECF No. 24) and a detailed motion requesting a pretrial conference pursuant the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III § 2, to address the issues of discovery and the disclosure and use of classified information. ECF. No. 22. The latter motion set forth the set of procedures codified in CIPA for courts to use when ruling on matters concerning discovery, admissibility, and use of classified information in criminal cases.

Characterizing the United States's position as "speculative", Defendant

2

opposed the Government's complex case motion and argued that "Defense counsel is not yet able to ascertain whether the litigation the United States anticipates will be necessary." ECF No. 27, PageID.81. Defendant then waited until September 19, 2023—nine months—to file his suppression motion despite the United States raising the delay this motion would cause at every intervening status conference. Now, the Defendant complains of the delay associated with the need to comply with FISA and CIPA. Despite the volume of discovery materials and the protracted and compulsory procedures associated with FISA and CIPA litigation, Defendant continues to oppose the complex case designation.

A.  <u>Defendant's Claim that the Government has had Six Years to Complete Discovery is Demonstrably False and Misleading.</u>

Defendant has <u>repeatedly</u> argued that all of the discovery in this case should have been completed by October 17, 2017, five years before indictment. This novel assertion—made without any supporting statute, caselaw, rule, or practice—has been argued at every turn, in status conferences, pleadings, and now as a justification for opposing the Government's reasonable request for time to respond to Defendant's boilerplate FISA suppression motion. It is a baseless assertion which obfuscates and mischaracterizes the issues.

Although the indictment specifies October 30, 2017, as the last date of

3

alleged conduct, the investigation did not terminate on that date. In fact, in some ways, the investigation began with the seizure of evidence from the Defendant's home on October 30, 2017, and during the months preceding the Defendant's arrest on state parole violations.[1] For instance, the FBI found chemicals, glass measuring cups and jars, electronic components, metal pellets and spheres, several drones, wiring and parts, among other things during the October 30, 2017, search of Defendant's home. The items warranted further investigation, as did the several cellular telephones and other electronic devices/media seized that day. Multiple laboratory tests, examinations and analyses were performed on numerous items over many months.

Significantly, in early 2019 the FBI Laboratory's Explosives and Hazardous Devices Unit concluded that the precursor chemicals, metal spheres, and other materials seized from Naser's home, if properly assembled, would comprise an Improvised Explosive Device ("IED") also known as a destructive device, or homemade bomb that could cause property damage, personal injury, and/or death, and identified triacetone triperoxide, or TATP as

---

[1] Defendant was released from the Michigan Department of Corrections ("MDOC") and placed on parole on March 18, 2016, after his conviction on a state armed robbery offense for which he received a sentence of 3 to 15 years. Defendant was arrested on October 30, 2017, for violating his parole conditions. That same day, FBI executed a federal search warrant at Defendant's home.

the main explosive charge.

An analysis of Defendant's cellular phone showed he had downloaded a well-known Ibn Taymiyyah Media Center ("ITMC") jihad media production video that provided detailed, step-by-step instructions for the manufacture of triacetone triperoxide (TATP), an unstable high explosive known by terrorists as "The Mother of Satan."[2] The video was translated into English and the FBI examiner compared the materials found in Defendant's home with the materials and process described in the ITMC video, finding substantial overlap and similarities.

Several federal search warrants were issued in this case in August 2017, November 6, 2017, May 18, 2018, and June 29, 2018, for, among other things, cellular telephones, computers, thumb drives and other storage media, and for iCloud data. In addition to the time needed to extract and analyze the data on these devices, the Arabic language materials required translations. Although

---

[2] TATP is a "terrorist staple" that has been used in numerous terror attacks for decades, including the December 2001 "shoe bomber" Richard Reid's attempt to detonate an explosive during a Paris to Miami flight; the 2005 London bombings; the 2009 failed New York City subway plot; the "Underwear bomber" Umar Farouk Abdulmutallab's attack aboard a Detroit-bound flight in 2009, the 2015 Paris attacks, and the 2016 Brussels airport and metro attacks by ISIS. *See* https://www.washingtonpost.com/news/checkpoint/wp/2016/03/23/the-type-of-bombs-used-in-brussels-have-been-seen-before/.

investigative work slowed during the COVID-19 pandemic, the investigation resumed in the year or so leading up to the indictment, where additional investigative steps were taken. The review of classified materials also added additional layers of investigation and analysis during this period.

Terrorism investigations present unique challenges. It is for this reason that Congress expanded the statute of limitations period from five to eight years for certain terrorism offenses—including 18 U.S.C. § 2339B, provision of material support and resources to foreign terrorist organizations—with the enactment of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322, Tit. XII, 120001, 108 Stat. 2021 (1994). 18 U.S.C. § 3286(a). Therefore, Defendant's assertion that the Government had "six years and seven days from the last alleged offense conduct" is false and misleading.

B. <u>The Government has Acted with Diligence in Meeting its Discovery Obligations.</u>

The Government has exercised due diligence in meeting its discovery obligations and providing discovery to the Defendant in this case. Defendant was indicted on October 5, 2022, and arraigned on November 15, 2022. The parties met with defense counsel on December 5, 2022, to discuss the case, the United States' need for a protective order, and the timing and scope of discovery. Counsel for Defendant expressed the need for significant additional

6

time to review discovery and to prepare for and file motions. Shortly after a stipulated protective order was issued by the Court on December 12, 2022, (ECF No. 18), the United States promptly provided Defendant with voluminous discovery on December 21, 2022. This included approximately 630 items totaling 4784 pages, and 3.1 gigabytes of digital media. On December 20, 2022, the United States provided approximately 4 terabytes of data on a hard drive provided by the defendant. In addition, on February 14, 2023, the parties met at the FBI's office to review some of the digital evidence in the case.[3]

Discovery dissemination was interrupted when the United States learned the Defendant had violated the Court's protective order. The United States filed a sealed motion to amend the protective order on April 5, 2023. ECF No. 38. During a status hearing before Judge Denise Page Hood that same day, the United States alerted the Court that it would suspend discovery dissemination pending the outcome of the motion to amend the protective order, instead making the discovery materials available for review by defense (at the United States Attorneys' Office ("USAO")). ECF No. 53, PageID.220-21. The United States also advised the Court that although non-classified discovery would be

---

[3] The Government began discovery dissemination on December 21, 2022, five months before the defense made a formal request for discovery on May 17, 2023.

7

completed in approximately six weeks, the United States needed eight months to complete its classified review process. Id. at PageID.221-22. The United States asked the Court to set up a status conference in four months so the Government could update the court on its progress. Id.

Shortly thereafter, the case was reassigned to this Court, and another status conference was held on May 16, 2023. ECF No. 71. The United States reiterated its offer to make discovery review available to defense counsel at the USAO, or alternatively, the United States offered to provide copies of discovery materials to defense counsel if they stipulated and agreed not to share the materials with the Defendant until the motion to amend the protective order issue was resolved. Id at PageID.359. Defense counsel agreed to come to the USAO and review discovery materials, and did so on four occasions, on August 15-16, September 18, and October 19, 2023. Their review is not complete but remains ongoing. To date, more than 10,463 documents plus other materials have been made available to the defense to review at the USAO.

C. <u>The United States' Request for Additional Time is Reasonable.</u>

The Government's requests for additional time are neither extraordinary or even unusual for cases involving classified information, FISA, and CIPA. The reasons for the requests have been fully explained to the court on the

8

record, and supplemented, when appropriate, with classified information during on the record, *ex parte* proceedings. Consider the most recent example in this district: *United States v. Musaibli*, 2:18-CR-20495. That case was indicted July 19, 2018, and the alleged criminal conduct occurred as early as April 2015. The CIPA Section 4 motion was submitted just over a year after indictment, on July 29, 2019. In this case, the United States is asking for just slightly more time with a final due date less than 14 months after indictment— which is justified given the fact that this case involves the use and protection of FISA material, which *Musaibli* did not. Elsewhere in this circuit, in *United States v. Asgari*, 1:16-CR-124 (N.D. Ohio), the defendant's indictment was unsealed on April 20, 2016, and the Government's CIPA motion was not submitted until January 27, 2019, over two years later. Thus, given the complexities of this case, the United States' requests for additional time are reasonable.

D. <u>Cleared Counsel Are Not Entitled to Participate in the Classified Discovery Process and Ex Parte Hearings.</u>

Defendant also complains that, because defense counsel does not have a security clearance, they cannot see the Government's filings regarding its progress on classified discovery review. But a security clearance would not change anything. A security clearance does not entitle defense counsel to

9

participate in CIPA litigation. "Even if counsel had been cleared, under the provisions of CIPA, they still would not have been able to participate in the classified discovery process and *ex parte* hearings." *United States v. Amawi*, 695 F.3d 457, 473 (6th Cir. 2012). Put simply, the fact that a defense counsel might have a security clearance "does not alter" CIPA's requirement that the district court make "decisions on an ex parte basis." *United States v. Asgari*, 940 F.3d 188, 191 (6th Cir. 2019).

## CONCLUSION

For these reasons, the United States respectfully requests that the Court grant the relief sought its motion to extend the deadline to file response to motion to disclose and suppress FISA (ECF No. 74) and motion to extend deadline to complete classified discovery and for submission of CIPA motions (ECF No. 79).

Respectfully submitted,

DAWN N. ISON
United States Attorney

*/s/Saima S. Mohsin*
SAIMA S. MOHSIN
Assistant United States Attorney

*/s/Dmitriy Slavin*
DMITRIY SLAVIN
Trial Attorney
National Security Division

Date: October 26, 2023