UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

                Plaintiff,             Case No. 22-CR-20504

v.                                  Hon. Jonathan J.C. Grey

AWS MOHAMMED NASER,

                Defendant.

_____/

## THE GOVERNMENT'S UNCLASSIFIED MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISCLOSE AND SUPPRESS FISA MATERIALS

## TABLE OF CONTENTS

I.      INTRODUCTION.......................................................................1

        A.  BACKGROUND ...............................................................4

        B.  OVERVIEW OF THE FISA AUTHORITIES AT ISSUE .........................5

            1.  [**CLASSIFIED INFORMATION REDACTED**] ...............5

            2.  [**CLASSIFIED INFORMATION REDACTED**] ...............5

            3.  [**CLASSIFIED INFORMATION REDACTED**] ...............5

II.     THE FISA PROCESS ...............................................................5

        A.  OVERVIEW OF FISA .......................................................5

        B.  THE FISA APPLICATION...................................................8

            1.  The Certification.................................................10

            2.  Minimization Procedures........................................11

            3.  Attorney General's Approval .................................12

        C.  THE FISC'S ORDERS.......................................................12

III.    DISTRICT COURT'S REVIEW OF FISC ORDERS....................................18

        A.  THE REVIEW IS TO BE CONDUCTED *IN CAMERA* AND *EX
            PARTE*.......................................................................19

            1.  *In Camera, Ex Parte* Review Is the Rule .............22

            2.  *In Camera, Ex Parte* Review Is Constitutional....................29

        B.  THE DISTRICT COURT'S SUBSTANTIVE REVIEW .........................31

            1.  Standard of Review of Probable Cause .................31

            2.  Probable Cause Determination .........................33

            3.  Standard of Review of Certifications .................37

      4.  FISA Is Subject to the "Good Faith" Exception.....................39

IV.  THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH AT ISSUE WERE LAWFULLY AUTHORIZED AND CONDUCTED.............42

    A.  THE INSTANT FISA APPLICATION(S) MET FISA'S PROBABLE CAUSE STANDARD ...................................................................43

        1.  **[CLASSIFIED INFORMATION REDACTED]** ...........................43

        2.  **[CLASSIFIED INFORMATION REDACTED]** ...........................43

        3.  **[CLASSIFIED INFORMATION REDACTED]** ...........................43

    B.  THE CERTIFICATIONS COMPLIED WITH FISA ...............................44

        1.  Foreign Intelligence Information..............................................45

        2.  "A Significant Purpose" ...........................................................45

        3.  Information Not Reasonably Obtainable Through Normal Investigative Techniques..................................................................................45

    C.  THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH WERE CONDUCTED IN CONFORMITY WITH AN ORDER OF AUTHORIZATION OR APPROVAL.......................................................45

        1.  The Minimization Procedures .................................................45

        2.  The FISA Information Was Appropriately Minimized........................51

V.  THE COURT SHOULD REJECT NASER'S LEGAL ARGUMENTS.........51

    A.  Naser Has Not Established Any Basis for the Court to Disclose the FISA Materials .................................................................................53

    B.  Naser Has Not Established Any Basis for the Court to Suppress the FISA Information ...............................................................................56

        1.  The Government Has Satisfied the Applicable "Significant Purpose" Standard ..................................................................................58

        2.  The Government Has Satisfied the Certification Requirements and Normal Investigative Techniques Standards.........................................61

3. The Government Has Satisfied the Probable Cause Standard ............61

4. The Government Satisfied the Particularity Requirement ...................63

5. The Court Should Not Second-Guess Whether the Need for Secrecy Still Exists..........................................................................................64

VI. CONCLUSION: THERE IS NO BASIS TO DISCLOSE THE FISA MATERIALS OR SUPPRESS THE FISA INFORMATION ........................66

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACLU Found. of So. Cal. v. Barr,*
   952 F.2d 457 (D.C. Cir. 1991) ................................................................. 28-29

*Brady v. Maryland,*
   373 U.S. 83 (1963) ..................................................................................... 65

*CIA v. Sims,*
   471 U.S. 159 (1985) ................................................................................ 26-27

*Davis v. United States,*
   564 U.S. 229 (2011) ..................................................................................... 42

*Dep't of Navy v. Egan,*
   484 U.S. 518 (1988) .............................................................................. 66 n.18

*Franks v. Delaware,*
   438 U.S. 154 (1978) ................................................................................. 37-38

*Global Relief Found. Inc. v. O'Neill,*
   315 F.3d 748 (7th Cir. 2002) ...................................................................... 16

*Global Relief Found. Inc. v. O'Neill,*
   207 F. Supp. 2d 779 (N.D. Ill. 2002) ......................................................... 16

*Halperin v. CIA,*
   629 F.2d 144 (D.C. Cir. 1980) .................................................................... 27

*Hammoud v. United States,*
   543 U.S. 1097 (2005) ............................................................................. 47, 49

*Illinois v. Gates,*
   462 U.S. 213 (1983) ............................................................................... 32, 63

*Illinois v. Krull,*
   480 U.S. 340 (1987) ............................................................................... 41-42

*In re Grand Jury Proceedings of the Special Apr. 2002 Grand Jury,*
   347 F.3d 197 (7th Cir. 2003) .................................................................. 23, 37

v

*In re Kevork,*
    788 F.2d 566 (9th Cir. 1986) ............................................................................25

*In re Kevork,*
    634 F. Supp. 1002 (C.D. Cal. 1985) .........................................................25, 47

*In re Sealed Case,*
    310 F.3d 717 (FISA Ct. Rev. 2002)........................... 36, 46-47, 60, 62

*Mason v. Godinez,*
    47 F.3d 852 (7th Cir. 1995) ............................................................................62

*Massachusetts v. Sheppard,*
    468 U.S. 981 (1984).........................................................................................41

*Phillippi v. CIA,*
    655 F.2d 1325 (D.C. Cir. 1981)....................................................................26

*Scott v. United States,*
    436 U.S. 128 (1978)..........................................................................................49

*United States v. Abu-Jihaad,*
    630 F.3d 102 (2d Cir. 2010) ..............................................................*passim*

*United States v. Abu-Jihaad,*
    531 F. Supp. 2d 299 (D. Conn. 2008)....................................15, 23, 25

*United States v. Ahmed,*
    No. 1:06-cr-147-WSD-GGB, 2009 U.S. Dist. LEXIS 120007 (N.D. Ga.
    Mar. 19, 2009)...................................................................... 32-33, 40, 62

*United States v. Alimehmeti,*
    No. 16 Cr. 398 (PAE), ECF No. 68 (S.D.N.Y. Oct. 2, 2017) ......................24, 32

*United States v. Allen,*
    211 F.3d 970 (6th Cir. 2000) .........................................................................32

*United States v. Alwan,*
    No. 1:11-CR-13-R, 2012 WL 399154 (W.D. Ky. Feb. 7, 2012)....32 n.16, 34, 38

*United States v. Amawi,*
    695 F.3d 457 (6th Cir. 2012) ........................................................ 20, 22, 26-27

*United States v. Amawi,*
   531 F. Supp. 2d 832 (N.D. Ohio 2008) .................................................. 22, 26-27

*United States v. Badia,*
   827 F.2d 1458 (11th Cir. 1987) ......................................................... 24, 37-38, 58

*United States v. Belfield,*
   692 F.2d 141 (D.C. Cir. 1982).................................................................*passim*

*United States v. Benkahla,*
   437 F. Supp. 2d 541 (E.D. Va. 2006) ..........................................................29, 60

*United States v. Bin Laden,*
   126 F. Supp. 2d 264 (S.D.N.Y. 2000) ..................................................... 42, 46-47

*United States v. Bynum,*
   485 F.2d 490 (2d Cir. 1973) ................................................................................49

*United States v. Campa,*
   529 F.3d 980 (11th Cir. 2008) ...................................................................... 37-38

*United States v. Cavanagh,*
   807 F.2d 787 (9th Cir. 1987) ........................................................... 19, 33-34, 36

*United States v. Daher,*
   2020 WL 7664789 (E.D. Mich. Dec. 24, 2020) ............31-32 n.16, 36-37, 60, 62

*United States v. Damrah,*
   412 F.3d 618 (6th Cir. 2005) ..........................................................29, 35, 59, 60

*United States v. Daoud,*
   755 F.3d 479 (7th Cir. 2014) ........................................21-22, 23 n.15, 28, 54-55

*United States v. Daoud,*
   761 F.3d 678 (7th Cir. 2014) ...............................................................................59

*United States v. Daoud,*
   No. 12 cr 723, 2014 WL 321384 (N.D. Ill. Jan. 29, 2014)...................23 n.15, 54

*United States v. Duggan,*
   743 F.2d 59 (2d Cir. 1984) .....................................................................*passim*

*United States v. Duka,*
  671 F.3d 329 (3d Cir. 2011) ...........................................19, 34, 42, 60

*United States v. El-Mezain,*
  664 F.3d 467 (5th Cir. 2011) ................................... 19, 21-23, 29, 34

*United States v. Falcone,*
  500 F.2d 1401 (3d Cir. 1974) ...........................................................50

*United States v. Falcone,*
  364 F. Supp. 877 (D. N.J. 1973)................................................. 50-51

*United States v. Falvey,*
  540 F. Supp. 1306 (E.D.N.Y. 1982) ...........................................30, 36

*United States v. Fishenko,*
  No. 12 CR 626 (SJ), 2014 WL 4804215 (E.D.N.Y. Sept. 25, 2014) ................32

*United States v. Garcia,*
  413 F.3d 201 (2d Cir. 2005) ............................................................39

*United States v. Hamide,*
  914 F.2d 1147 (9th Cir. 1990) ........................................................21

*United States v. Hammoud,*
  381 F.3d 316 (4th Cir. 2005) ......................................................47, 49

*United States v. Helton,*
  35 F.4th 511 (6th Cir. 2022) ......................................................40, 42

*United States v. Isa,*
  923 F.2d 1300 (8th Cir. 1991) .................................................*passim*

*United States v. Islamic Am. Relief Agency,*
  No. 07-00087-CR-W-NKL, 2009 WL 5169536 (W.D. Mo. Dec. 21,
  2009) ........................................................................26, 37, 39

*United States v. Johnson,*
  952 F.2d 565 (1st Cir. 1991)...........................................................59

*United States v. Joseph,*
  709 F.3d 1082 (11th Cir. 2013) .......................................................32

*United States v. Kashmiri,*
    No. 09 CR 830-4, 2010 WL 4705159 (N.D. Ill. Nov. 10, 2010) ... 32 n.16, 37-38

*United States v. Krupa,*
    658 F.3d 1174 (9th Cir. 2011) .............................................................32

*United States v. Leon,*
    468 U.S. 897 (1984)................................................................... 39-42

*United States v. Mahamud,*
    838 F. Supp. 2d 881 (D. Minn. 2012)........................................57, 60

*United States v. Marzook,*
    435 F. Supp. 2d 778 (N.D. Ill. 2006)....................................36, 40, 60

*United States v. McClain,*
    444 F.3d 556 (6th Cir. 2005) .............................................................40

*United States v. Medunjanin,*
    No. 10 CR 19 1, 2012 WL 526428 (E.D.N.Y. Feb. 16, 2012)...................*passim*

*United States v. Megahey,*
    553 F. Supp. 1180 (E.D.N.Y. 1982) ..................................................29

*United States v. Mohammad,*
    339 F. Supp. 3d 724 (N.D. Ohio 2018) .......................................*passim*

*United States v. Mohamud,*
    No. 3:10-CR-00475-KI-1, 2014 WL 2866749 (D. Or. June 24, 2014)..............58

*United States v. Mubayyid,*
    521 F. Supp. 2d 125 (D. Mass. 2007).........................................*passim*

*United States v. Nicholson,*
    955 F. Supp. 588 (E.D. Va. 1997) .....................................................24

*United States v. Ning Wen,*
    477 F.3d 896 (7th Cir. 2007) ..........................................19, 36, 40, 60

*United States v. Omar,*
    786 F.3d 1104 (8th Cir. 2015) .....................................................*passim*

*United States v. Omar,*
　　No. 09-242 (MJD/FLN), 2012 WL 2357734 (D. Minn. June 20, 2012)............38

*United States v. Ott,*
　　827 F.2d 473 (9th Cir. 1987) .................................................................21, 26, 29

*United States v. Pelton,*
　　835 F.2d 1067 (4th Cir. 1987) .......................................................................19, 36

*United States v. Rahman,*
　　189 F.3d 88 (2d Cir. 1999) ..................................................................................15

*United States v. Rahman,*
　　861 F. Supp. 247 (S.D.N.Y. 1994) ....................................................15, 37, 46-47

*United States v. Robinson,*
　　724 F.3d 878 (7th Cir. 2013) ..............................................................................32

*United States v. Rosen,*
　　447 F. Supp. 2d 538 (E.D. Va. 2006) ........................................................*passim*

*United States v. Salameh,*
　　152 F.3d 88 (2d Cir. 1998) ..................................................................................47

*United States v. Sarkissian,*
　　841 F.2d 959 (9th Cir. 1988) ..............................................................................61

*United States v. Sattar,*
　　No. 02 Cr. 395 (JGK), 2003 WL 22137012 (S.D.N.Y. Sept. 15, 2003) ............24

*United States v. Smith,*
　　581 F.3d 692 (8th Cir. 2009) ..............................................................................32

*United States v. Squillacote,*
　　221 F.3d 542 (4th Cir. 2000) ..............................................................................15

*United States v. Stewart,*
　　590 F.3d 93 (2d Cir. 2009) ........................................................23, 28-29, 32, 62

*United States v. Thomson,*
　　752 F. Supp. 75 (W.D.N.Y. 1990).................................................................24-25, 47-48

*United States v. Turner,*
    840 F.3d 336 (7th Cir. 2016) ................................................................15, 34, 37

*United States v. U.S. Gypsum Co.,*
    333 U.S. 364 (1948)..................................................................................38

*United States v. United States District Court ("Keith"),*
    407 U.S. 297 (1972)..............................................................................34-35

*United States v. Warsame,*
    547 F. Supp. 2d 982 (D. Minn. 2008).......................................................*passim*

*United States v. Yunis,*
    867 F.2d 617 (D.C. Cir. 1989)....................................................................27

*United States v. Zubaydah,*
    595 U.S. 195 (2022)..........................................................................66 n.18

**Federal Statutes**

18 U.S.C. § 922 ....................................................................................4

18 U.S.C. § 2339B ...............................................................................4

50 U.S.C. § 1801 ...........................................................................*passim*

50 U.S.C. §§ 1801-1812 .....................................................................2 n.3

50 U.S.C. § 1803 ................................................................................6

50 U.S.C. § 1804 ...........................................................................*passim*

50 U.S.C. § 1805 ...........................................................................*passim*

50 U.S.C. § 1806 ...........................................................................*passim*

50 U.S.C. § 1821 ...........................................................................*passim*

50 U.S.C. §§ 1821-1829 .....................................................................2 n.3

50 U.S.C. § 1823 ...........................................................................*passim*

50 U.S.C. § 1824 ...........................................................................*passim*

50 U.S.C. § 1825 ...........................................................................*passim*

Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-
    351, Title III, 82 Stat. 197 (1968) ............................................................ 35-36, 49

Uniting and Strengthening America by Providing Appropriate Tools
    Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No.
    107-56, § 218, 115 Stat. 272 (2001) ............................................................ 6, 59

**Other Authorities**

U.S. Const. amend. I ................................................................................... 15

U.S. Const. amend IV ........................................................................... *passim*

Exec. Order No. 12333, 46 Fed. Reg. 59941 (Dec. 8, 1981), 3 C.F.R.,
    1981 Comp., p. 200 (1982) ................................................................... 40

Fed. R. Crim. P. 41 ................................................................................... 33

H.R. Rep. No. 95-1283, 95th Cong., 2d Sess., pt. 1 (1978) ...................... 47-48, 51

S. Rep. No. 95-604, pt. 1, 95th Cong., 1st Sess. (1978) ................................ 23 n.14

S. Rep. No. 95-701, 95th Cong., 2d Sess. (1978) ...................................... 35, 49, 54

## I.    INTRODUCTION

The Government is filing this unclassified memorandum in opposition to

Aws Mohammed Naser's ("Naser") Motion to Disclose and Suppress FISA

Materials and brief in support thereof ("Naser's Motion").[1]  (ECF No. 73,

PageID.370-79.)  Under the provisions of the Foreign Intelligence Surveillance Act

("FISA"), 50 U.S.C. §§ 1801 *et seq.*, Naser's Motion seeks "disclosure of [the]

FISA materials and to suppress all information unlawfully acquired or surveillance

conducted not in conformity with an order of authorization or approval, and to

suppress any fruits of unlawful surveillance or searches."  (ECF No. 73,

PageID.371.)  Specifically, Naser moves the Court to: (1) compel the Government

"to determine if the Attorney General will submit an affidavit attesting that

disclosure of FISA applications, FISA orders, and other FISA materials in this case

[(the 'FISA materials')] would harm national security;" (2) provide Naser with "a

copy of the Attorney General affidavit, if filed;" (3) conduct an *in camera, ex parte*

inspection of the FISA materials to "determine whether the surveillance was

lawfully authorized and appropriately conducted;" (4) disclose any FISA materials

"to defendant's counsel because such disclosures are necessary to make an

accurate determination of the legality of the surveillance;" and (5) "[s]uppress all

---

[1] As a result of the redactions, the pagination and footnote numbering of the classified memorandum and the unclassified memorandum are different.

information unlawfully acquired or surveillance conducted not in conformity with

an order of authorization or approval, and suppress any fruits of unlawful[]

surveillance or searches."[2]  (ECF No. 73, PageID.377.)

Naser's Motion has triggered this Court's review of the FISA materials

related to the FISA-authorized electronic surveillance and physical search to

determine whether the FISA information was lawfully acquired and whether the

electronic surveillance and physical search were made in conformity with an order

of authorization or approval.[3]  FISA specifies:

> [W]henever a motion is made pursuant to subsection (e) . . . to
> discover or obtain applications or orders or other materials
> relating to electronic surveillance [or physical search] or to
> discover, obtain, or suppress evidence or information obtained
> or derived from electronic surveillance [or physical search]
> under this Act, the United States district court . . . shall, . . . if
> the Attorney General[[4]] files an affidavit under oath that

---

[2]  **[CLASSIFIED INFORMATION REDACTED]**

[3]  The provisions of FISA that address electronic surveillance are found at
50 U.S.C. §§ 1801-1812; those that address physical search are found at 50 U.S.C.
§§ 1821-1829.  These two sets of provisions are in many respects parallel and
almost identical.  Citations herein are generally to the two sets of provisions in
parallel, with the first citation being to the relevant electronic surveillance
provision, and the second citation being to the relevant physical search provision.
This memorandum references the statutory language in effect at the time relevant
to this matter.

[4]  As defined in FISA, "Attorney General" means the Attorney General of
the United States (or Acting Attorney General), the Deputy Attorney General, or,
upon the designation of the Attorney General, the Assistant Attorney General for
National Security ("AAG/NS").  *See* 50 U.S.C. §§ 1801(g), 1821(1).  Such
designation was made by then-Attorney General Eric. H. Holder, Jr., on April 24,
2009.

> disclosure or an adversary hearing would harm the national
> security of the United States, review *in camera* and *ex parte* the
> application, order, and such other materials relating to the
> surveillance [or search] as may be necessary to determine
> whether the surveillance [or search] of the aggrieved person
> was lawfully authorized and conducted.

50 U.S.C. §§ 1806(f), 1825(g). The Government is filing herewith such an

affidavit.[5] Consequently, the Government respectfully submits that Naser's first

and second requests for relief—to compel a determination regarding the filing, and

the production, of the affidavit—are moot; and, for the reasons set forth herein, this

Court must conduct an *in camera*, *ex parte* review of the FISA materials relevant

to Naser's Motion in accordance with the provisions of 50 U.S.C. §§ 1806(f) and

1825(g), satisfying Naser's third request.[6]

Furthermore, the Government respectfully submits that, for the reasons set

forth below, and as the Court's *in camera*, *ex parte* review will show, that: (1) that

the disclosure of the FISA materials and the Government's classified submissions

to Naser is not authorized because the Court can make an accurate determination of

the legality of the FISA-authorized electronic surveillance and physical search

without disclosing the FISA materials or portions thereof; and (2) the suppression

---

[5] The Declaration and Claim of Privilege, an affidavit executed by the
AAG/NS, is filed both publicly and as an exhibit in the Sealed Appendix to this
classified filing. *See* Sealed Ex. 1.

[6] **[CLASSIFIED INFORMATION REDACTED]**

3

of the FISA information is unwarranted because the electronic surveillance and physical search at issue in this case were both lawfully authorized and lawfully conducted in compliance with FISA.

## A.    BACKGROUND

**[CLASSIFIED INFORMATION REDACTED]**

On October 5, 2022, a grand jury in the Eastern District of Michigan returned an indictment charging Naser with one count of attempting to provide material support and resources to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1); and one count of possessing a destructive device as a felon, in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 1, PageID.1-2.)

On December 21, 2022, the Government provided notice to this Court and Naser that it intends to offer into evidence, or otherwise use or disclose, information obtained or derived from electronic surveillance and physical search conducted pursuant to FISA.  (ECF No. 24, PageID.66-67.)  *See* 50 U.S.C. §§ 1806(c), 1825(d).

**[CLASSIFIED INFORMATION REDACTED]**

On September 19, 2023, Naser filed his Motion seeking disclosure and suppression of the FISA materials.  (ECF No. 73, PageID.370-79.)

**[CLASSIFIED INFORMATION REDACTED]**

**B.    OVERVIEW OF THE FISA AUTHORITIES AT ISSUE**

**[CLASSIFIED INFORMATION REDACTED]**

**1.    [CLASSIFIED INFORMATION REDACTED]**

**[CLASSIFIED INFORMATION REDACTED][7]**

**2.    [CLASSIFIED INFORMATION REDACTED]**

**[CLASSIFIED INFORMATION REDACTED]**

**3.    [CLASSIFIED INFORMATION REDACTED]**

**[CLASSIFIED INFORMATION REDACTED]**

The various findings required under FISA to approve electronic surveillance

or physical search, and the Government's submissions to the Foreign Intelligence

Surveillance Court ("FISC") addressing those requirements in the docket(s) at

issue, are discussed in detail below.

**II.    THE FISA PROCESS**

**A.    OVERVIEW OF FISA**

Enacted in 1978, and subsequently amended, FISA authorizes the Chief

Justice of the United States to designate eleven United States district judges to sit

---

[7] Under FISA, initial FISC approval for electronic surveillance, physical search, or both extends for 90 days in cases targeting United States persons and 120 days in cases targeting non-United States persons. *See* 50 U.S.C. §§ 1805(d)(1)(B); 1824(d)(1)(B). Under FISA, renewed FISC approval for electronic surveillance and/or physical search targeting non-United States persons may be extended by the FISC for up to one year. *See id.* §§ 1805(d)(2); 1824(d)(2). **[CLASSIFIED INFORMATION REDACTED]**

as judges of the FISC.  50 U.S.C. § 1803(a)(1).  The FISC judges are empowered to consider *ex parte* applications submitted by the Executive Branch for electronic surveillance and physical search when a significant purpose of the application is to obtain foreign intelligence information, as defined in FISA.  Rulings of the FISC are subject to review by the Foreign Intelligence Surveillance Court of Review ("FISC of Review"), which is composed of three United States district or circuit judges who are designated by the Chief Justice.  *Id.* § 1803(b).

As originally enacted, FISA required that a high-ranking member of the Executive Branch of Government certify that "the purpose" of the FISA application was to obtain foreign intelligence information.  In 2001, FISA was amended as part of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, § 218, 115 Stat. 272 (2001) ("USA PATRIOT Act").  One change to FISA accomplished by the USA PATRIOT Act is that a high-ranking official is now required to certify that the acquisition of foreign intelligence information is "a significant purpose" of the requested surveillance.  *See id.* §§ 1804(a)(6)(B), 1823(a)(6)(B).

FISA provides that the Attorney General may authorize the emergency employment of electronic surveillance and physical search if the Attorney General:

> (A) reasonably determines that an emergency situation exists with
> respect to the employment of electronic surveillance [or physical

6

search] to obtain foreign intelligence information before an order authorizing such surveillance can with due diligence be obtained;

(B) reasonably determines that the factual basis for the issuance of an order under this title to approve such electronic surveillance [or physical search] exists;

(C) informs, either personally or through a designee, a judge having jurisdiction under [50 U.S.C. § 1803] at the time of such authorization that the decision has been made to employ emergency electronic surveillance [or physical search]; and

(D) makes an application in accordance with this title to a judge having jurisdiction under section 103 as soon as practicable, but not later than seven days after the Attorney General authorizes such electronic surveillance [or physical search].

*See id.* §§ 1805(e)(1), 1824(e)(1).[8]  Emergency electronic surveillance or physical search must comport with FISA's minimization requirements, which are discussed below. *Id.* §§ 1805(e)(2), 1824(e)(2).[9]

---

[8] **[CLASSIFIED INFORMATION REDACTED]**

[9] If no FISC order authorizing the electronic surveillance or physical search is issued, emergency surveillance or search must terminate when the information sought is obtained, when the FISC denies an application for an order, or after the expiration of seven days from the time of the emergency employment, whichever is earliest. *See id.* §§ 1805(e)(3), 1824(e)(3).  Moreover, if no FISC order is issued, absent a showing of good cause, the FISC shall cause to be served on any U.S. person named in the application, and others in the FISC's discretion, notice of the fact of the application, the period of the surveillance, and the fact that during the period information was or was not obtained. *See id.* § 1806(j); *see also id.* § 1825(j)(1) (physical search).  In addition, if no FISC order is issued, neither information obtained nor evidence derived from the emergency electronic surveillance or physical search may be disclosed in any court or other proceeding, and no information concerning a U.S. person acquired from the electronic surveillance or physical search may be used in any other manner by Federal officers or employees without the person's consent, except with the approval of the

## B.    THE FISA APPLICATION

FISA provides a statutory procedure whereby the Executive Branch may

obtain a judicial order authorizing the use of electronic surveillance and/or physical

search within the United States where a significant purpose is the collection of

foreign intelligence information.[10]  *Id.* §§ 1804(a)(6)(B), 1823(a)(6)(B).  Under

FISA, foreign intelligence information is defined as:

> (1) information that relates to, and if concerning a United States
> person[[11]] is necessary to, the ability of the United States to
> protect against—
>
> > (A) actual or potential attack or other grave hostile acts of a
> > foreign power or an agent of a foreign power;
> >
> > (B) sabotage, international terrorism, or the international
> > proliferation of weapons of mass destruction by a foreign
> > power or an agent of a foreign power; or
> >
> > (C) clandestine intelligence activities by an intelligence
> > service or network of a foreign power or by an agent of a
> > foreign power; or
>
> (2) information with respect to a foreign power or foreign
> territory that relates to, and if concerning a United States person
> is necessary to—
>
> > (A) the national defense or the security of the United States;
> > or
> >
> > (B) the conduct of the foreign affairs of the United States.

---

Attorney General if the information indicates a threat of death or serious bodily
harm.  *See id.* §§ 1805(e)(5), 1824(e)(5).

[10]  **[CLASSIFIED INFORMATION REDACTED]**

[11]  **[CLASSIFIED INFORMATION REDACTED]**

*Id.* § 1801(e); *see also id.* § 1821(1) (adopting the definitions from 50 U.S.C.

§ 1801).  With the exception of emergency authorizations, FISA requires that a

court order be obtained before any electronic surveillance or physical search may

be conducted.

An application to conduct electronic surveillance pursuant to FISA must

contain, among other things:

> (1) the identity of the federal officer making the application;
>
> (2) the identity, if known, or a description of the specific target of the electronic surveillance;
>
> (3) a statement of the facts and circumstances supporting probable cause to believe that the target is a foreign power or an agent of a foreign power, and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;
>
> (4) a statement of the proposed minimization procedures to be followed;
>
> (5) a description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;
>
> (6) a certification, discussed below, of a high-ranking official;
>
> (7) a summary of the manner or means by which the electronic surveillance will be effected and a statement whether physical entry is required to effect the electronic surveillance;
>
> (8) the facts concerning and the action taken on all previous FISA applications involving any of the persons, facilities, or places specified in the application; and
>
> (9) the proposed duration of the electronic surveillance.

*Id.* § 1804(a)(1)-(9).

An application to conduct a physical search pursuant to FISA must contain similar information as an application to conduct electronic surveillance except that an application to conduct a physical search must also contain a statement of the facts and circumstances that justify an applicant's belief that "the premises or property to be searched contains foreign intelligence information" and that each "premises or property to be searched is or is about to be, owned, used, possessed by, or is in transit to or from" the target. *Id.* § 1823(a)(3)(B), (C).

### 1.    The Certification

An application to the FISC for a FISA order must include a certification from a high-ranking Executive Branch official with national security responsibilities that:

> (A) the certifying official deems the information sought to be foreign intelligence information;
>
> (B) a significant purpose of the surveillance is to obtain foreign intelligence information;
>
> (C) such information cannot reasonably be obtained by normal investigative techniques;
>
> (D) designates the type of foreign intelligence information being sought according to the categories described in [50 U.S.C. §] 1801(e); and
>
> (E) includes a statement of the basis for the certification that –
>
>> (i) the information sought is the type of foreign intelligence information designated; and

10

(ii) such information cannot reasonably be obtained by
normal investigative techniques.

*Id.* § 1804(a)(6); *see also id.* § 1823(a)(6).

### 2.    Minimization Procedures

The Attorney General has adopted, and the FISC has approved,

minimization procedures that regulate the acquisition, retention, and dissemination

of non-publicly available information concerning unconsenting United States

persons obtained through FISA-authorized electronic surveillance or physical

search, including persons who are not the targets of the FISA authorities.  FISA

requires that such minimization procedures be:

> reasonably designed in light of the purpose and technique of the
> particular surveillance, to minimize the acquisition and
> retention, and prohibit the dissemination, of nonpublicly
> available information concerning unconsenting United States
> persons consistent with the need of the United States to obtain,
> produce, and disseminate foreign intelligence information.

*Id.* §§ 1801(h)(1), 1821(4)(A).

In addition, minimization procedures also include "procedures that allow for

the retention and dissemination of information that is evidence of a crime which

has been, is being, or is about to be committed and that is to be retained or

disseminated for law enforcement purposes."  *Id.* §§ 1801(h)(3), 1821(4)(c).

**[CLASSIFIED INFORMATION REDACTED]**

11

### 3.   Attorney General's Approval

FISA further requires that the Attorney General approve applications for

electronic surveillance and/or physical search before they are presented to the

FISC.

### C.   THE FISC'S ORDERS

Once approved by the Attorney General, the application is submitted to the

FISC and assigned to one of its judges.  The FISC may approve the requested

electronic surveillance and/or physical search only upon finding, among other

things, that:

> (1) the application has been made by a "Federal officer" and has been approved by the Attorney General;
>
> (2) there is probable cause to believe that (A) the target of the electronic surveillance and/or physical search is a foreign power or an agent of a foreign power, and that (B) the facilities or places at which the electronic surveillance is directed are being used, or are about to be used, by a foreign power or an agent of a foreign power, or that the premises or property to be searched is, or is about to be, owned, used, possessed by, or is in transit to or from, a foreign power or an agent of a foreign power;
>
> (3) the proposed minimization procedures meet the statutory requirements set forth in section 1801(h) (electronic surveillance) and section 1821(4) (physical search);
>
> (4) the application contains all of the statements and certifications required by section 1804 (electronic surveillance) or section 1823 (physical search); and
>
> (5) if the target is a United States person, the certifications are not clearly erroneous.

*Id.* §§ 1805(a)(1)-(4), 1824(a)(1)-(4).

FISA defines "foreign power" to mean—

> (1) a foreign government or any component, thereof, whether or not recognized by the United States;
>
> (2) a faction of a foreign nation or nations, not substantially composed of United States persons;
>
> (3) an entity that is openly acknowledged by a foreign government or governments to be directed and controlled by such foreign government or governments;
>
> (4) a group engaged in international terrorism or activities in preparation therefor;
>
> (5) a foreign-based political organization, not substantially composed of United States persons;
>
> (6) an entity that is directed and controlled by a foreign government or governments; or
>
> (7) an entity not substantially composed of United States persons that is engaged in the international proliferation of weapons of mass destruction.

*Id.* § 1801(a)(1)-(7); *see also id.* § 1821(1) (adopting definitions from 50 U.S.C.

§ 1801).

"Agent of a foreign power" means—

> (1) any person other than a United States person, who—
>
> > (A) acts in the United States as an officer or employee of a foreign power, or as a member of a foreign power as defined in subsection (a)(4), irrespective of whether the person is inside the United States;
> >
> > (B) acts for or on behalf of a foreign power which engages in clandestine intelligence activities in the United States contrary to the interests of the United States, when the circumstances indicate that such person may engage in such

activities, or when such person knowingly aids or abets any person in the conduct of such activities or knowingly conspires with any person to engage in such activities;

(C) engages in international terrorism or activities in preparation therefore [sic];

(D) engages in the international proliferation of weapons of mass destruction, or activities in preparation therefor; or

(E) engages in the international proliferation of weapons of mass destruction, or activities in preparation therefor, for or on behalf of a foreign power, or knowingly aids or abets any person in the conduct of such proliferation or activities in preparation therefor, or knowingly conspires with any person to engage in such proliferation or activities in preparation therefor; or

(2) any person who—

(A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;

(B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States;

(C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power;

(D) knowingly enters the United States under a false or fraudulent identity for or on behalf of a foreign power or, while in the United States, knowingly assumes a false or fraudulent identity for or on behalf of a foreign power; or

14

> (E) knowingly aids or abets any person in the conduct of
> activities described in subparagraphs (A), (B), or (C) or
> knowingly conspires with any person to engage in activities
> described in subparagraphs (A), (B), or (C).

*Id.* § 1801(b)(1)-(2); *see also id.* § 1821(1) (adopting definitions from 50 U.S.C.
§ 1801).

FISA specifies that no United States person may be considered a foreign
power or an agent of a foreign power solely on the basis of activities protected by
the First Amendment to the Constitution of the United States. *Id.*
§§ 1805(a)(2)(A), 1824(a)(2)(A). Although protected First Amendment activities
cannot form the sole basis for FISA-authorized electronic surveillance or physical
search, they may be considered by the FISC if there is other activity indicative that
the target is an agent of a foreign power. *United States v. Rahman*, 861 F. Supp.
247, 252 (S.D.N.Y. 1994), *aff'd*, 189 F.3d 88 (2d Cir. 1999); *United States v.
Rosen*, 447 F. Supp. 2d 538, 548-49 (E.D. Va. 2006). The FISA application must
establish probable cause to believe the target is acting as an agent of a foreign
power at the time of the application. *See United States v. Turner*, 840 F.3d 336,
340-41 (7th Cir. 2016) (finding probable cause that the target of the FISA
collection was an agent of a foreign power); *United States v. Squillacote*, 221 F.3d
542, 554 (4th Cir. 2000) (concluding that the FISA applications established
"probable cause to believe that . . . [the targets] were agents of a foreign power at
the time the applications were granted"); *United States v. Abu-Jihaad*, 531 F. Supp.

15

2d 299, 310 (D. Conn. 2008) (finding that the FISA collection was lawfully collected and finding specifically, *inter alia*, that "[e]ach application contained facts establishing probable cause to believe that, at the time the application was submitted to the FISC, the target of the FISA collection was an agent of a foreign power . . . ."), *aff'd*, 630 F.3d 102 (2d Cir. 2010); *Global Relief Found. Inc. v. O'Neill*, 207 F. Supp. 2d 779, 790 (N.D. Ill. 2002) (concluding that "the FISA application established probable cause . . . at the time the search was conducted and the application was granted"), *aff'd*, 315 F.3d 748 (7th Cir. 2002). However, FISA provides that "[i]n determining whether or not probable cause exists . . . a judge may consider past activities of the target, as well as facts and circumstances relating to current or future activities of the target." 50 U.S.C. §§ 1805(b), 1824(b).

If the FISC has made all of the necessary findings and is satisfied that the FISA application meets the statutory provisions, the FISC issues an *ex parte* order authorizing the electronic surveillance and/or physical search requested in the application. *Id.* §§ 1805(a), 1824(a). The order must:

> (1) . . . specify—
>
>> (A) the identity, if known, or a description of the specific target of the [collection];
>>
>> (B) the nature and location of each of the facilities or places at which the electronic surveillance will be directed, if

known [and/or of each of the premises or properties to be searched];

(C) the type of information sought to be acquired and the type of communications or activities to be subjected to the [electronic] surveillance [and/or the type of information, material, or property to be seized, altered, or reproduced through the physical search];

(D) the means by which the electronic surveillance will be effected and whether physical entry will be used to effect the surveillance [and/or a statement of the manner in which the physical search will be conducted and, whenever more than one physical search is authorized under the order, the authorized scope of each search and what minimization procedures shall apply to the information acquired by each search]; and

(E) the period of time during which the electronic surveillance is approved [and/or the period of time during which physical searches are approved; and]

(2) . . . direct—

(A) that the minimization procedures be followed . . . .

*Id.* §§ 1805(c)(1), (2)(A), 1824(c)(1), (2)(A).

As discussed *supra* at footnote 7, under FISA, initial FISC approval for electronic surveillance and/or physical search extends for 90 days in cases targeting United States persons and 120 days in cases targeting non-United States persons. *See id.* §§ 1805(d)(1)(B); 1824(d)(1)(B). Under FISA, renewed FISC approval for electronic surveillance and/or physical search targeting non-United States persons may be extended by the FISC for up to one year. *See id.* §§ 1805(d)(2); 1824(d)(2).

17

## III.   DISTRICT COURT'S REVIEW OF FISC ORDERS

FISA authorizes the use of information obtained or derived from any FISA-authorized electronic surveillance or physical search in a criminal prosecution, provided that advance authorization is obtained from the Attorney General, *see id.* §§ 1806(b), 1825(c), and that proper notice is subsequently given to the court and to each aggrieved person[12] against whom the information is to be used, *see id.* §§ 1806(c)-(d), 1825(d)-(e).  Upon receiving notice, an aggrieved person against whom the information is to be used may move to suppress the FISA information on two grounds: (1) the information was unlawfully acquired; or (2) the electronic surveillance or physical search was not conducted in conformity with an order of authorization or approval.  *Id.* §§ 1806(e), 1825(f).  In addition, FISA contemplates that a defendant may file a motion or request under any other statute or rule of the United States to discover or obtain applications, orders, or other materials relating to relevant electronic surveillance or physical search, *i.e.*, the FISA materials.  *Id.* §§ 1806(f), 1825(g).

---

[12] An "aggrieved person" is defined as the target of electronic surveillance or "any other person whose communications or activities were subject to electronic surveillance," 50 U.S.C. § 1801(k), as well as "a person whose premises, property, information, or material is the target of physical search" or "whose premises, property, information, or material was subject to physical search."  *Id.* § 1821(2). Naser is an "aggrieved person" under FISA, and as noted above, was provided with notice of his status as such and of the Government's intent to use FISA-obtained or -derived information against him at trial.

When a defendant moves to suppress FISA information under 50 U.S.C.

§§ 1806(e) or 1825(f), or seeks to discover the FISA materials under some other

statute or rule, the motion or request is evaluated using FISA's probable cause

standard, which is discussed in more detail below, and not the probable cause

standard applicable to criminal warrants. *See, e.g., United States v. Ning Wen*, 477

F.3d 896, 898 (7th Cir. 2007). "[FISA's] probable cause standard is different from

the standard in the typical criminal case because, rather than focusing on probable

cause to believe that a person has committed a crime, the FISA standard focuses on

the status of the target as a foreign power or an agent of a foreign power." *United*

*States v. El-Mezain*, 664 F.3d 467, 564 (5th Cir. 2011); *see also United States v.*

*Duka*, 671 F.3d 329, 336-37 (3d Cir. 2011) (rejecting appellant's challenge to

FISA's probable cause standard because it does not require any indication that a

crime has been committed); *United States v. Pelton*, 835 F.2d 1067, 1075 (4th Cir.

1987); *United States v. Cavanagh*, 807 F.2d 787, 791 (9th Cir. 1987) (rejecting

appellant's argument for suppression because evidence of criminal conduct was

incidentally discovered as the result of FISA surveillance not supported by

probable cause of criminal activity).

## A.   THE REVIEW IS TO BE CONDUCTED *IN CAMERA* AND *EX PARTE*

In assessing the legality of FISA-authorized electronic surveillance and/or

physical search, the district court:

> shall, notwithstanding any other law, if the Attorney General
> files an affidavit under oath that disclosure or an adversary
> hearing would harm the national security of the United States,
> review in camera and ex parte the application, order, and such
> other materials relating to the surveillance as may be necessary
> to determine whether the surveillance of the aggrieved person
> was lawfully authorized and conducted.[13]

50 U.S.C. §§ 1806(f), 1825(g). On the filing of such an affidavit or declaration, as

has been filed here by the AAG/NS, the court "may disclose to the aggrieved

person, under appropriate security procedures and protective orders, portions of the

application, order, or other materials relating to the surveillance [or search] <u>only

where such disclosure is necessary to make an accurate determination of the

legality of the surveillance [or search]</u>." *Id.* §§ 1806(f), 1825(g) (emphasis added).

Thus, the propriety of the disclosure of any FISA applications or orders to a

defendant may not even be considered unless and until the district court has first

concluded that it is unable to make an accurate determination of the legality of the

acquired collection after reviewing the Government's submissions (and any

supplemental pleadings that the district court may request) *in camera* and *ex parte*.

*See United States v. Amawi*, 695 F.3d 457, 474 (6th Cir. 2012) (noting the district

court's denial of a defense motion for disclosure followed its "in camera review of

the FISA materials"); *United States v. Duggan*, 743 F.2d 59, 78 (2d Cir. 1984)

(after an *in camera* review, the court "has the discretion to disclose portions of the

---

[13]  **[CLASSIFIED INFORMATION REDACTED]**

20

documents, under appropriate protective procedures, only if [the judge] decides

that such disclosure is 'necessary to make an accurate determination of the legality

of the surveillance.'") (quoting 50 U.S.C. § 1806(f)); *United States v. Daoud*, 755

F.3d 479, 484 (7th Cir. 2014) ("Unless and until a district judge performs his or her

statutory duty of attempting to determine the legality of the surveillance without

revealing any of the fruits of the surveillance to defense counsel, there is no basis

for concluding that disclosure is necessary in order to avert an erroneous

conviction."); *United States v. Omar*, 786 F.3d 1104, 1110-11 (8th Cir. 2015)

(citing *United States v. Isa*, 923 F.2d 1300, 1306 (8th Cir. 1991)); *El-Mezain*, 664

F.3d at 565; *United States v. Hamide*, 914 F.2d 1147, 1149-50 (9th Cir. 1990)

(upon review of the FISA materials, the court determined "that [disclosure] is not

necessary, to the determination of the legality of the electronic surveillances

submitted to the court to disclose those [FISA materials] to respondents"); *United

States v. Ott*, 827 F.2d 473, 476 (9th Cir. 1987); *United States v. Belfield*, 692 F.2d

141, 147 (D.C. Cir. 1982).

If the district court is able to make an accurate determination of the legality

of the electronic surveillance and physical search based on its *in camera*, *ex parte*

review, then the court *may not* order disclosure of any of the FISA materials to the

defense, unless otherwise required by due process. *See Abu-Jihaad*, 630 F.3d

at 129 ("agreeing with the district court's "determin[ation] that disclosure and an

21

adversarial hearing were unnecessary because [the district court's] *in camera, ex parte* review permitted it to assess the legality of the challenged surveillance and the requirements of due process did not counsel otherwise"); *El-Mezain*, 664 F.3d at 566; *United States v. Mohammad*, 339 F. Supp. 3d 724, 737 (N.D. Ohio 2018).

### 1. *In Camera, Ex Parte* Review Is the Rule

Federal courts have repeatedly and consistently held that FISA anticipates that an *ex parte, in camera* determination is to be the rule, while disclosure and an adversary hearing are the exception, occurring *only* when necessary. *See United States v. Amawi*, 531 F. Supp. 2d 832, 837 (N.D. Ohio 2008) ("Where on the basis of what it receives from the government *in camera* and under seal, a district court concludes that it can determine whether a FISA surveillance and search was lawful, it may not order disclosure of any of the FISA materials."), *aff'd* 695 F.3d 457 (6th Cir. 2012); *Abu-Jihaad*, 630 F.3d at 129 ("conclud[ing] that disclosure of FISA materials 'is the exception and *in camera, ex parte* determination is the rule'"); *Daoud*, 755 F.3d at 481 (finding that "the district judge must, in a non-public ('*in camera*'), nonadversarial ('*ex parte*') proceeding, attempt to determine whether the surveillance was proper"); *Duggan*, 743 F.2d at 78;[14] *El-Mezain*, 664

---

[14] In *Duggan*, the U.S. Court of Appeals for the Second Circuit ("Second Circuit") explained that disclosure might be necessary "if the judge's initial review revealed potential irregularities such as 'possible misrepresentations of fact, vague identification of persons to be surveilled or surveillance records which include[] a significant amount of nonforeign intelligence information, calling into question

F.3d at 567 ("disclosure of FISA materials is the exception and *ex parte*, *in camera*
determination is the rule"); *Belfield*, 692 F.2d at 147; *accord Omar*, 786 F.3d
at 1110 (quoting *Isa*, 923 F.2d at 1306); *Rosen*, 447 F. Supp. 2d at 546.

In fact, every court but one (whose decision was subsequently overturned by
the U.S. Court of Appeals for the Seventh Circuit ("Seventh Circuit"))[15] that has
addressed a motion to disclose FISA materials or to suppress FISA information has
been able to reach a conclusion as to the legality of the FISA collection at issue
based on its *in camera*, *ex parte* review. *See, e.g., United States v. Stewart*, 590
F.3d 93 (2d Cir. 2009); *Abu-Jihaad*, 531 F. Supp. 2d at 310; *Omar*, 786 F.3d
at 1110-11; *El-Mezain*, 664 F.3d at 566 (quoting district court's statement that no
court had ever held an adversarial hearing to assist the court); *In re Grand Jury
Proceedings of the Special Apr. 2002 Grand Jury ("In re Grand Jury
Proceedings")*, 347 F.3d 197, 203 (7th Cir. 2003) (noting that no court had ever

---

compliance with the minimization standards contained in the order.'" 743 F.2d
at 78 (quoting S. Rep. No. 95-604, pt. 1, 95th Cong., 1st Sess., at 58 (1978),
*reprinted in* 1978 U.S.C.C.A.N. 3904, 3960).

[15] The district court in *United States v. Daoud*, No. 12 cr 723, 2014 WL
321384 (N.D. Ill. Jan. 29, 2014), ruled that it was capable of making the required
determination, but nevertheless ordered the disclosure of FISA materials. The
Government appealed the *Daoud* court's order to the Seventh Circuit, which
overturned the district court's decision to disclose, stating, "So clear is it that the
materials were properly withheld from defense counsel that there is no need for a
remand to enable the district judge to come to the same conclusion, because she
would have to do so." *Daoud*, 755 F.3d at 485.

ordered disclosure of FISA materials); *Isa*, 923 F.2d at 1306 ("study of the

materials leaves no doubt that substantial national security interests required the *in*

*camera, ex parte* review, and that the district court properly conducted such a

review"); *United States v. Alimehmeti*, No. 16 Cr. 398 (PAE), Conf. Tr. 6, ECF

No. 68 (S.D.N.Y. Oct. 2, 2017) (noting that *in camera, ex parte* determination of

legality of FISA surveillance is "the rule" and finding that, because such a review

"permitted the Court to make an accurate determination of the challenged

surveillance . . . [d]isclosure and an adversary hearing are therefore not necessary"

(internal quotation marks omitted)); *United States v. Badia*, 827 F.2d 1458, 1463

(11th Cir. 1987); *Rosen*, 447 F. Supp. 2d at 546; *United States v. Sattar*, No. 02 Cr.

395 (JGK), 2003 WL 22137012, at *6 (S.D.N.Y. Sept. 15, 2003) (quoting *United*

*States v. Nicholson*, 955 F. Supp. 588, 592 & n.11 (E.D. Va. 1997)) (noting at the

time that "this court knows of no instance in which a court has required an

adversary hearing or disclosure in determining the legality of a FISA

surveillance"); *United States v. Thomson*, 752 F. Supp. 75, 79 (W.D.N.Y. 1990).

   As the exhibits in the Sealed Appendix make clear, there is nothing

extraordinary about the instant FISA-authorized electronic surveillance and

physical search that would justify the production and disclosure of highly sensitive

and classified FISA materials or the suppression of FISA-obtained or -derived

evidence.  Here, the FISA materials are well-organized and easily reviewable by

24

the Court *in camera* and *ex parte*, and they are fully and facially sufficient to allow

the Court to make an accurate determination that the FISA information was

lawfully acquired and that the electronic surveillance and physical search were

made in conformity with an order of authorization or approval.  In other words, the

materials presented "are straightforward and readily understood."  *In re Kevork*,

634 F. Supp. 1002, 1008 (C.D. Cal. 1985), *aff'd*, 788 F.2d 566 (9th Cir. 1986).

Moreover, while voluminous discovery and the presence of classified documents

contributes to the overall complexity of litigating this case, the specific

determination of legality of the FISA collection, as in other cases, is not complex.

*See Belfield*, 692 F.2d at 147; *Abu-Jihaad*, 531 F. Supp. 2d at 310; *United States v.*

*Warsame*, 547 F. Supp. 2d 982, 987 (D. Minn. 2008) (finding that the "issues

presented by the FISA applications are straightforward and uncontroversial");

*Thomson*, 752 F. Supp. at 79.  This Court, much like the aforementioned courts, is

capable of reviewing the FISA materials *in camera* and *ex parte* and making the

requisite legal determination without an adversarial hearing.

  In addition to the specific harm that would result from the disclosure of the

FISA materials in this case, which is detailed in the classified declaration of a high-

ranking Federal Bureau of Investigation ("FBI") official in support of the

Declaration and Claim of Privilege of the AAG/NS, the underlying rationale for

non-disclosure is clear: "Congress has a legitimate interest in authorizing the

Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to *anyone* not involved in the surveillance operation in question." *Ott*, 827 F.2d at 477 (emphasis in original); *accord Amawi*, 531 F. Supp. 2d at 838 (finding that the FISA materials contained considerable "operational and technical information" the disclosure of which could adversely affect the Government's ability to obtain "useful foreign intelligence information"); *Isa*, 923 F.2d at 1306 (the court's "study of the materials leaves no doubt that substantial national security interests required the *in camera, ex parte* review, and that the district court properly conducted such a review"); *United States v. Medunjanin*, No. 10 CR 19 1, 2012 WL 526428, at *9 (E.D.N.Y. Feb. 16, 2012) (finding persuasive the Government's argument that "unsealing the FISA materials in this case would provide the defense with unnecessary details of an extraordinarily sensitive anti-terrorism investigation"); *United States v. Islamic Am. Relief Agency ("IARA")*, No. 07-00087-CR-W-NKL, 2009 WL 5169536, at *3-4 (W.D. Mo. Dec. 21, 2009).

Confidentiality is critical to national security. "If potentially valuable intelligence sources" believe that the United States "will be unable to maintain the confidentiality of its relationship to them, many [of those sources] could well refuse to supply information." *CIA v. Sims*, 471 U.S. 159, 175 (1985); *see also Phillippi v. CIA*, 655 F.2d 1325, 1332-33 (D.C. Cir. 1981). When considering

26

whether the disclosure of classified sources, methods, techniques, or information would harm the national security, federal courts have expressed a great reluctance to replace the considered judgment of Executive Branch officials charged with the responsibility of weighing a variety of subtle and complex factors in determining whether the disclosure of information may lead to an unacceptable risk of compromising the intelligence-gathering process, and determining whether foreign agents, spies, and terrorists are capable of piecing together a mosaic of information that, when revealed, could reasonably be expected to harm the national security of the United States. *See Sims*, 471 U.S. at 180; *Amawi*, 531 F. Supp. 2d at 837 (refusing to "second-guess" the Attorney General's declaration stating that disclosure or an adversary hearing would harm national security); *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods."); *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980) ("each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself"). An adversary hearing is not only unnecessary to aid the

Court in the straightforward task before it, but such a hearing would also create

potential dangers that courts have consistently sought to avoid.

As the *Belfield* court explained:

> Congress recognized the need for the Executive to engage in
> and employ the fruits of clandestine surveillance without being
> constantly hamstrung by disclosure requirements.  The statute is
> meant to "reconcile national intelligence and
> counterintelligence needs with constitutional principles in a
> way that is consistent with both national security and individual
> rights."  In FISA the privacy rights of individuals are ensured
> not through mandatory disclosure, but through its provisions for
> in-depth oversight of FISA surveillance by all three branches of
> government and by a statutory scheme that to a large degree
> centers on an expanded conception of minimization that differs
> from that which governs law enforcement surveillance.

692 F.2d at 148 (footnotes and citations omitted); *see also Stewart*, 590 F.3d at 128

("FISA applications are likely to contain allegedly sensitive information relating to

perceived issues of national security. . . .  For this reason, *ex parte*, *in camera*

determination is to be the rule.") (quoting *Duggan*, 743 F.2d at 77); *Daoud*, 755

F.3d at 483 ("Everyone recognizes that privacy is a legally protectable interest, and

it is not an interest of private individuals alone.  [FISA] is an attempt to strike a

balance between the interest in full openness of legal proceedings and the interest

in national security, which requires a degree of secrecy concerning the

government's efforts to protect the nation."); *ACLU Found. of So. Cal. v. Barr*, 952

F.2d 457, 465 (D.C. Cir. 1991) (citing *Belfield* for the proposition that 50 U.S.C.

28

§ 1806(f) "is an acceptable means of adjudicating the constitutional rights of persons who have been subjected to FISA surveillance").

### 2.    *In Camera, Ex Parte* Review Is Constitutional

The constitutionality of FISA's *in camera, ex parte* review provisions has been affirmed by every federal court that has considered the matter, including the U.S. Court of Appeals for the Sixth Circuit ("Sixth Circuit"). *See United States v. Damrah*, 412 F.3d 618, 624 (6th Cir. 2005) ("FISA's requirement that the district court conduct an *ex parte, in camera* review of FISA materials does not deprive a defendant of due process."); *see also Stewart*, 590 F.3d at 126 (the Second Circuit concluding that "the procedures fashioned in FISA [are] a constitutionally adequate balancing of the individual's Fourth Amendment rights against the nation's need to obtain foreign intelligence information") (quoting *Duggan*, 743 F.2d at 73); *Abu-Jihaad*, 630 F.3d at 117; *El-Mezain*, 664 F.3d at 567; *Ott*, 827 F.2d at 476-77 (FISA's review procedures do not deprive a defendant of due process); *Belfield*, 692 F.2d at 148-49; *ACLU Found. of So. Cal.*, 952 F.2d at 465; *Isa*, 923 F.2d at 1306 (upholding the district court's *in camera, ex parte* review as constitutional and stating that the process delineated under FISA "provides even more protection" than defendants receive in other contexts); *United States v. Benkahla*, 437 F. Supp. 2d 541, 554 (E.D. Va. 2006); *United States v. Megahey*, 553 F. Supp. 1180, 1194 (E.D.N.Y. 1982) ("*ex parte, in camera* procedures

provided in 50 U.S.C. § 1806(f) are constitutionally sufficient to determine the lawfulness of the electronic surveillance at issue while safeguarding defendant's fourth amendment rights"); *United States v. Falvey*, 540 F. Supp. 1306, 1315-16 (E.D.N.Y. 1982) (a "massive body of pre-FISA case law of the Supreme Court, [the Second] Circuit and others" supports the conclusion that the legality of electronic surveillance should be determined on an *in camera, ex parte* basis).

In summary, FISA mandates a process by which the district court must conduct an initial *in camera, ex parte* review of FISA applications, orders, and related materials in order to determine whether the FISA information was lawfully acquired and whether the electronic surveillance and physical search were made in conformity with an order of authorization or approval. This *in camera, ex parte* review process is the rule in such cases and that procedure is constitutional. In this case, the AAG/NS has filed the required declaration invoking that procedure and has declared that disclosure or an adversary hearing would harm national security. Accordingly, an *in camera, ex parte* review by this Court is the appropriate venue in which to determine whether the FISA information was lawfully acquired and whether the electronic surveillance and physical search were made in conformity with an order of authorization or approval.

**B.    THE DISTRICT COURT'S SUBSTANTIVE REVIEW**

In evaluating the legality of the FISA collection, a district court's review should determine: (1) whether the certification submitted by the Executive Branch in support of a FISA application was properly made; (2) whether the application established the probable cause showing required by FISA; and (3) whether the collection was properly minimized. *See Abu-Jihaad*, 630 F.3d at 130-31; *see also* 50 U.S.C. §§ 1806(f), 1825(g).

**1.    Standard of Review of Probable Cause**

Although federal courts are not in agreement as to whether the FISC's probable cause determination should be reviewed *de novo* or accorded due deference, the material under review here satisfies either standard of review. *See Omar*, 786 F.3d at 1112 ("[W]e have no hesitation concluding that probable cause under FISA existed under any standard of review."); *Abu-Jihaad*, 630 F.3d at 130 ("Although the established standard of judicial review applicable to FISA warrants is deferential, the government's detailed and complete submissions in this case would easily allow it to clear a higher standard of review"). The Government respectfully submits that it is appropriate to accord due deference to the findings of the FISC, but notes that a number of courts, including district courts in the Sixth Circuit, have reviewed the FISC's probable cause determination *de novo*.[16]  While

---

[16] *See, e.g., United States v. Daher*, 2020 WL 7664789, at *3 (E.D. Mich.

31

in the minority, other courts have afforded due deference to the findings of the

FISC. *Abu-Jihaad*, 630 F.3d at 130; *accord United States v. Ahmed*, No. 1:06-cr-

147-WSD-GGB, 2009 U.S. Dist. LEXIS 120007, at *21-22 (N.D. Ga. Mar. 19,

2009) (FISC's "determination of probable cause should be given 'great deference'

by the reviewing court") (citing *Gates*, 462 U.S. at 236); *Stewart*, 590 F.3d at 128;

*Alimehmeti*, No. 16 Cr. 398 (PAE), Conf. Tr. 7, ECF No. 68; *United States v.*

*Fishenko*, No. 12 CR 626 (SJ), 2014 WL 4804215, at *3 (E.D.N.Y. Sept. 25,

2014); *cf. Medunjanin*, 2012 WL 526428, at *6-7 (affording deferential review, but

noting that such review is not superficial).

In the analogous area of criminal searches and surveillance, the law in the

Sixth Circuit, as well as that in other federal circuits, accords great deference to a

magistrate judge's probable cause determinations. *See, e.g.*, *United States v. Allen*,

211 F.3d 970, 973 (6th Cir. 2000); *see also United States v. Krupa*, 658 F.3d 1174,

1177 (9th Cir. 2011); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009);

*United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013) (citing *Gates*, 462

U.S. at 236); *United States v. Robinson*, 724 F.3d 878, 884 (7th Cir. 2013).  It

---

Dec. 24, 2020); *Mohammad*, 339 F. Supp. 3d at 736; *United States v. Alwan*,
No. 1:11-CR-13-R, 2012 WL 399154, at *8, 10 (W.D. Ky. Feb. 7, 2012);
*Warsame*, 547 F. Supp. 2d at 990 (citing *Illinois v. Gates*, 462 U.S. 213, 214
(1983)); *Rosen*, 447 F. Supp. 2d at 545; *United States v. Kashmiri*, No. 09 CR 830-
4, 2010 WL 4705159, at *1 (N.D. Ill. Nov. 10, 2010).  In each of these cases, the
courts applied a *de novo* standard in reviewing the FISC's probable cause findings,
and each court found the applications before it contained probable cause.

would thus be consistent for a court that is reviewing FISA-authorized electronic

surveillance or physical search to adopt the same posture it would when reviewing

the probable cause determination of a criminal search warrant issued pursuant to

Rule 41 of the Federal Rules of Criminal Procedure. *See Ahmed*, 2009 U.S. Dist.

LEXIS 120007, at *21-22 (according the same deference to the FISC's probable

cause determination as to a magistrate's criminal probable cause determination); *cf.*

*Cavanagh*, 807 F.2d at 790 (concluding that a FISA order can be considered a

warrant since it is issued by a detached judicial officer and is based on a reasonable

showing of probable cause).

### 2.    Probable Cause Determination

As acknowledged in Naser's Motion, FISA requires a "probable cause

determination [that] differs from the standard analysis this Court undertakes

because it focuses on whether Mr. Naser was an 'agent of a foreign power.'" (ECF

No. 73, PageID.376 (emphasis omitted).)  More precisely, FISA requires a finding

of probable cause that the target is a foreign power or an agent of a foreign power

and that each facility or place at which the electronic surveillance or physical

search is directed is, or is about to be, used, owned, possessed by, or is in transit to

or from, a foreign power or an agent of a foreign power.  50 U.S.C. §§ 1805(a),

1824(a); *Abu-Jihaad*, 630 F.3d at 130.  It is this probable cause determination—not

the standard determination applicable to criminal search warrants—that this Court

must review.  *See Abu-Jihaad*, 630 F.3d at 130-31; *Turner*, 840 F.3d at 340-41

(applying the FISA standard of probable cause rather than the probable cause in a

criminal case); *Omar*, 786 F.3d at 1111 ("[R]ather than focusing on probable cause

to believe that a person has committed a crime, the FISA standard focuses on the

status of the target as a foreign power or an agent of a foreign power.") (quoting

*El-Mezain*, 664 F.3d at 564); *Duka*, 671 F.3d at 338; *Cavanagh*, 807 F.2d at 790

(citing *United States v. United States District Court ("Keith")*, 407 U.S. 297, 322

(1972)); *Alwan*, 2012 WL 399154, at \*5 (explaining the probable cause standard

applicable to FISA orders "is different than the probable cause standard applicable

to a criminal arrest or search warrants").

        Although the probable cause findings required under FISA differ from the

findings applicable to criminal search warrants, the FISA standard is no less

constitutional.  The Supreme Court has stated that "[d]ifferent standards may be

compatible with the Fourth Amendment if they are reasonable both in relation to

the legitimate need of the Government for intelligence information and the

protected rights of our citizens."  *Keith*, 407 U.S. at 322-23 (recognizing that

domestic security surveillance "may involve different policy and practical

considerations than the surveillance of 'ordinary crime'").  In *Keith*, the Supreme

Court acknowledged that: (1) the "focus of . . . surveillance [in domestic security

investigations] may be less precise than that directed against more conventional

34

types of crime"; (2) unlike ordinary criminal investigations, "[t]he gathering of security intelligence is often long range and involves the interrelation of various sources and types of information"; and (3) the "exact targets of such surveillance may be more difficult to identify" than in surveillance operations of ordinary crimes under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (1968) ("Title III"). *Id.* Although *Keith* was decided before FISA's enactment and addressed purely domestic security surveillance, the rationale underlying *Keith* applies *a fortiori* to foreign intelligence surveillance, where the Government's interest, at least from a national security perspective, would typically be more pronounced.

Moreover, FISA was enacted partly in response to *Keith*. In constructing FISA's framework, Congress addressed *Keith*'s question of whether departures from traditional Fourth Amendment procedures "are reasonable, both in relation to the legitimate need of Government for intelligence information and the protected rights of our citizens," and "concluded that such departures are reasonable." *See* S. Rep. No. 95-701, 95th Cong., 2d Sess., at 11-12 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973, 3980. Similarly, many courts—including the Sixth Circuit and the FISC of Review—have relied on *Keith* in holding that FISA collection conducted pursuant to a FISC order is reasonable under the Fourth Amendment. *See Damrah*, 412 F.3d at 625 (denying a defendant's claim that FISA's procedures

35

violate the Fourth Amendment); *In re Sealed Case*, 310 F.3d 717, 738, 746 (FISA

Ct. Rev. 2002) (finding that while many of FISA's requirements differ from those

in Title III, few of those differences have constitutional relevance); *see also*

*Duggan*, 743 F.2d at 74 (holding that FISA does not violate the Fourth

Amendment); *Ning Wen*, 477 F.3d at 898 (holding that FISA is constitutional

despite using "a definition of 'probable cause' that does not depend on whether a

domestic crime has been committed"); *Pelton*, 835 F.2d at 1075 (finding FISA's

procedures compatible with the Fourth Amendment); *Cavanagh*, 807 F.2d at 790-

91 (holding that FISA satisfies the Fourth Amendment requirements of probable

cause and particularity); *Daher*, 2020 WL 7664789, at *4-5 (concluding a

defendant's Fourth Amendment challenge was unsupported by prevailing case

law); *Warsame*, 547 F. Supp. 2d at 993-94; *United States v. Mubayyid*, 521 F.

Supp. 2d 125, 135-41 (D. Mass. 2007) (rejecting claim that FISA violates the

Fourth Amendment's judicial review, probable cause, notice, and particularity

requirements); *United States v. Marzook*, 435 F. Supp. 2d 778, 786 (N.D. Ill. 2006)

("Courts uniformly have held that FISA procedures satisfy the Fourth

Amendment's reasonableness requirement"); *Falvey*, 540 F. Supp. at 1311-14

(finding that FISA procedures satisfy the Fourth Amendment's warrant

requirement).

**[CLASSIFIED INFORMATION REDACTED]**

### 3.    Standard of Review of Certifications

Certifications submitted in support of a FISA application should be "subject only to minimal scrutiny by the courts," *Badia*, 827 F.2d at 1463, and are "presumed valid." *Duggan*, 743 F.2d at 77 & n.6 (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)); *see also Turner*, 840 F.3d at 342; *United States v. Campa*, 529 F.3d 980, 993 (11th Cir. 2008); *Rosen*, 447 F. Supp. 2d at 545; *Daher*, 2020 WL 7664789, at *3 ("Like the application itself, the 'certification is . . . subjected to only minimal scrutiny by the courts.'") (quoting *Mohammad*, 339 F. Supp. 3d at 736); *Warsame*, 547 F. Supp. 2d at 990 ("a presumption of validity [is] accorded to the certifications"). When a FISA application is presented to the FISC, "[t]he FISA Judge, in reviewing the application, is not to second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information." *Mohammad*, 339 F. Supp. 3d at 736 (quoting *Duggan*, 743 F.2d at 77). Likewise, Congress intended that the reviewing district court should "have no greater authority to second-guess the executive branch's certifications than has the FISA judge." *Duggan*, 743 F.2d at 77; *see also In re Grand Jury Proceedings*, 347 F.3d at 204-05; *Badia*, 827 F.2d at 1463; *Rahman*, 861 F. Supp. at 250; *IARA*, 2009 WL 5169536, at *4; *Kashmiri*, 2010 WL 4705159, at *1.

The district court's review should determine whether the certifications were made in accordance with FISA's requirements. *See United States v. Omar*, No. 09-242 (MJD/FLN), 2012 WL 2357734, at *3 (D. Minn. June 20, 2012), *aff'd*, 786 F.3d 1104 ("the reviewing court must presume as valid 'the representations and certifications submitted in support of an application for FISA surveillance . . . absent a showing sufficient to trigger a *Franks* hearing'"); *see also Alwan*, 2012 WL 399154, at *7 ("The [c]ourt is not to second-guess whether the certifications were correct, but merely to ensure they were properly made.") (quoting *Ahmed*, 2009 U.S. Dist. LEXIS 120007, at *20); *Campa*, 529 F.3d at 993 ("in the absence of a *prima facie* showing of a fraudulent statement by the certifying officer, procedural regularity is the only determination to be made if a non-United States person is the target") (quoting *Badia*, 827 F.2d at 1463). Under FISA, "[t]he FISA Judge need only determine that the application contains all of the statements and certifications required by the Act if the target is a non-United States person, whereas [the FISA Judge] must also find that the certifications are not 'clearly erroneous' if the target is a United States person." *Duggan*, 743 F.2d at 75; *Campa*, 529 F.3d at 994; *Kashmiri*, 2010 WL 4705159, at *2. A "clearly erroneous" finding is established only when "although there is evidence to support it, the reviewing court on the [basis of the] entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S.*

*Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Garcia*, 413 F.3d 201, 222

(2d Cir. 2005); *IARA*, 2009 WL 5169536, at *4 (identifying "clearly erroneous"

standard of review for FISA certifications).

### 4. FISA Is Subject to the "Good Faith" Exception

Even assuming *arguendo* that this Court determines that a particular FISC

order was not supported by probable cause, or that one or more of the FISA

certification requirements were not met, the evidence obtained or derived from the

FISA-authorized electronic surveillance and physical search is, nonetheless,

admissible under the "good faith" exception to the exclusionary rule articulated in

*United States v. Leon*, 468 U.S. 897 (1984).  In *Leon*, the Supreme Court explained

that "the marginal or nonexistent benefits produced by suppressing evidence

obtained in objectively reasonable reliance on a subsequently invalidated search

warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922.

The Supreme Court was clear, however, not to suggest that exclusion is "always"

inappropriate, without further inquiry, when an officer obtains a warrant and abides

by its terms. *Id.*  Instead, the Supreme Court "confined" its "good-faith inquiry . . .

to the objectively ascertainable question whether a reasonably well trained officer

would have known that the search was illegal despite the magistrate's

authorization." *Id.* at 922 n.23.  To answer this objectively ascertainable question,

the Supreme Court identified four circumstances where an officer's reliance would

not be objectively reasonable:

> (1) the magistrate was "misled by information in the affidavit
> that the affiant knew was false or would have known was false
> except for his reckless disregard of the truth;" (2) the magistrate
> "abandoned his judicial role" or neutrality; (3) the warrant was
> "so lacking in indicia of probable cause" as to render official
> belief in its existence unreasonable; or (4) the warrant was so
> "facially deficient" that it could not reasonably be presumed
> valid.

*United States v. Helton*, 35 F.4th 511, 521 (6th Cir. 2022) (quoting *Leon*, 468 U.S.

at 922). *See also United States v. McClain*, 444 F.3d 556, 564-65 (6th Cir. 2005).

Further, the "confined" good-faith analysis articulated by the *Leon* Court is

equally applicable here, as numerous courts have stated that the good faith

exception applies to FISA evidence. *See Ning Wen*, 477 F.3d at 897 (noting that

federal officers were entitled to rely in good faith on a FISA warrant); *Ahmed*,

2009 U.S. Dist. LEXIS 120007, at *25 n.8, 26-27 ("The FISA evidence obtained

. . . would be admissible under *Leon*'s 'good faith' exception to the exclusionary

rule were it not otherwise admissible under a valid warrant."); *Mubayyid*, 521 F.

Supp. 2d at 140 n.12 ("there appears to be no issue as to whether the government

proceeded in good faith and in reasonable reliance on the FISA orders"); *Marzook*,

435 F. Supp. 2d at 790-91 (holding, in an analogous context, that "the FBI's

reliance on the Attorney General's approval under Executive Order No. 12333 – an

40

order that no court has found unconstitutional – was [] objectively reasonable because that order pertains to foreign intelligence gathering").

In this case, there is no basis to find that the FISC was misled by any declarations or certifications at issue, as these documents were neither deliberately nor recklessly false. *See Leon*, 468 U.S. at 914-15; *Massachusetts v. Sheppard*, 468 U.S. 981, 987-88 (1984). Further, there are no facts indicating that the FISC abandoned its judicial role or somehow failed to act in a neutral and detached manner when authorizing the electronic surveillance and physical search at issue. *See Leon*, 468 U.S. at 914-15. Moreover, as the Court will see from its *in camera, ex parte* review of the FISA materials, facts establishing the requisite probable cause were submitted to the FISC, the FISC's orders contained all of the requisite findings, and well-trained officers reasonably relied on those orders. Therefore, in the event that the Court questions whether a particular FISC order was supported by sufficient probable cause, the information obtained pursuant to that order would be admissible under *Leon*'s good faith exception to the exclusionary rule.

Lastly, consistent with its underlying rationale, the exclusionary rule should not be imposed to punish an officer who acts in objectively reasonable reliance on a duly issued warrant or enacted statute. In *Illinois v. Krull*, the Supreme Court "ruled categorically that 'suppressing evidence obtained by an officer acting in objectively reasonable reliance on a statute' would not further the purposes of the

exclusionary rule, even if that statute is later declared unconstitutional." *Duka*, 671

F.3d at 346-37 (quoting *Krull*, 480 U.S. 340, 349-50 (1987)).  The same is true for

warrants that are later determined to be invalid.  *See Helton*, 35 F.4th at 521

(quoting *Leon* for the proposition "that if 'the evidence was obtained in objectively

reasonable reliance on the subsequently invalidated search warrant, however, it

should not be suppressed").  "Because the rule 'is designed to deter police

misconduct,' it applies only where it will 'alter the behavior of individual law

enforcement officers or the policies of their departments.'" *Duka*, 671 F.3d at 346

(quoting *Leon*, 468 U.S. at 916-18).  Here, the exclusion of FISA information

would serve no such deterrent purpose.  *See Davis v. United States*, 564 U.S. 229,

237 (2011); *United States v. Bin Laden*, 126 F. Supp. 2d 264, 282-84 (S.D.N.Y.

2000).

## IV.   THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH AT ISSUE WERE LAWFULLY AUTHORIZED AND CONDUCTED

This section first discusses the materials in the Sealed Appendix in order to

demonstrate, in light of the standards of review described above, that the FISA

authorities in this matter were lawfully *authorized*.  This section then addresses the

Government's good-faith compliance with proper minimization procedures and

related requirements in order to demonstrate that the electronic surveillance and

physical search at issue were lawfully *conducted*.

A. **THE INSTANT FISA APPLICATION(S) MET FISA'S PROBABLE CAUSE STANDARD**

[CLASSIFIED INFORMATION REDACTED]

1. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

2. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

a. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

b. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

c. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

3. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

a. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

b. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

c. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

        **d.**    [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

        **e.**    [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

        **f.**    [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

        **g.**    [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

        **h.**    [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

        **i.**    [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

        **j.**    [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

        **k.**    [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

        **l.**    [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

        **m.**    [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

**B.**    **THE CERTIFICATIONS COMPLIED WITH FISA**

[CLASSIFIED INFORMATION REDACTED]

      **1.**      **Foreign Intelligence Information**

**[CLASSIFIED INFORMATION REDACTED]**

      **2.**      **"A Significant Purpose"**

**[CLASSIFIED INFORMATION REDACTED]**[17]

      **3.**      **Information Not Reasonably Obtainable Through Normal Investigative Techniques**

**[CLASSIFIED INFORMATION REDACTED]**

**C.**      **THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH WERE CONDUCTED IN CONFORMITY WITH AN ORDER OF AUTHORIZATION OR APPROVAL**

**[CLASSIFIED INFORMATION REDACTED]**

      **1.**      **The Minimization Procedures**

Once a reviewing court is satisfied that the FISA information was lawfully acquired, it must then examine whether the electronic surveillance and physical search were lawfully conducted. *See* 50 U.S.C. §§ 1806(e)(2), 1825(g). To do so, the reviewing court must determine whether the Government followed the relevant

---

[17] **[CLASSIFIED INFORMATION REDACTED]**

Although Naser's Motion claims that the Court must determine whether the "primary purpose" of the surveillance was domestic criminal activity, (ECF No. 73, PageID.375), the correct legal standard is whether "a significant purpose" of the electronic surveillance and/or physical search was to "obtain foreign intelligence information[,]" 50 U.S.C. §§ 1804(a)(6)(B), 1823(a)(6)(B). *See* discussion *infra* Section V.B.1.

minimization procedures to appropriately minimize the information acquired pursuant to FISA.

**[CLASSIFIED INFORMATION REDACTED]**

FISA's legislative history and the applicable case law demonstrate that the definitions of "minimization procedures" and "foreign intelligence information" were intended to take into account the realities of collecting foreign intelligence because the activities of persons engaged in clandestine intelligence gathering or international terrorism are often not obvious on their face. *See Rahman*, 861 F. Supp. at 252-53. The degree to which information is required to be minimized varies somewhat given the specifics of a particular investigation, such that less minimization at acquisition is justified when "the investigation is focusing on what is thought to be a widespread conspiracy" and more extensive surveillance is necessary "to determine the precise scope of the enterprise." *In re Sealed Case*, 310 F.3d at 741; *see also Bin Laden*, 126 F. Supp. 2d at 286 ("more extensive monitoring and greater leeway in minimization efforts are permitted in a case like this given the world-wide, covert and diffuse nature of the international terrorist group(s) targeted" [internal quotation marks omitted]). Furthermore, the activities of foreign powers and their agents are often not obvious from an initial or cursory overhear of conversations. To the contrary, agents of foreign powers frequently engage in coded communications, compartmentalized operations, the use of false

identities, and other practices designed to conceal the breadth and aim of their operations, organization, activities and plans. *See, e.g., United States v. Salameh*, 152 F.3d 88, 154 (2d Cir. 1998) (noting that two conspirators involved in the 1993 bombing of the World Trade Center in New York referred to the bomb plot as the "study" and to terrorist materials as "university papers"). As one court explained, "[i]nnocuous-sounding conversations may in fact be signals of important activity; information on its face innocent when analyzed or considered with other information may become critical." *Kevork*, 634 F. Supp. at 1017 (quoting H.R. Rep. No. 95-1283, 95th Cong., 2d Sess., pt. 1, at 55 (1978)); *see also United States v. Hammoud*, 381 F.3d 316, 334 (4th Cir. 2005) (citing *Salameh*, 152 F.3d at 154), *vacated on other grounds*, 543 U.S. 1097 (2005); *In re Sealed Case*, 310 F.3d at 740-41; *Thomson*, 752 F. Supp. at 81 (noting that it is permissible to retain and disseminate "bits and pieces" of information until the information's "full significance becomes apparent") (citing H.R. Rep. No. 95-1283, pt. 1, at 58); *Bin Laden*, 126 F. Supp. 2d at 286. Likewise, "individual items of information, not apparently significant when taken in isolation, may become highly significant when considered together over time." *Rahman*, 861 F. Supp. at 252-53 (citing H.R. Rep. No. 95-1283, pt. 1, at 55, 59). The Government must also be given flexibility where the conversations are carried out in a foreign language. *Mubayyid*, 521 F. Supp. 2d at 134; *Rahman*, 861 F. Supp. at 252. As a result,

47

"courts have construed 'foreign intelligence information' broadly and sensibly

allowed the government some latitude in its determination of what is foreign

intelligence information." *Rosen*, 447 F. Supp. 2d at 551.

The nature of the foreign intelligence information sought also impacts

implementation of the minimization procedures at the retention and dissemination

stages.  There is a legitimate need to conduct a thorough post-acquisition review of

FISA information that involves a United States person who is acting as an agent of

a foreign power.  As Congress explained:

> It is "necessary" to identify anyone working with him in this
> network, feeding him information, or to whom he reports.
> Therefore, it is necessary to acquire, retain and disseminate
> information concerning all his contacts and acquaintances and
> his movements.  Among his contacts and acquaintances,
> however, there are likely to be a large number of innocent
> persons.  Yet, information concerning these persons must be
> retained at least until it is determined that they are not involved
> in the clandestine intelligence activities and may have to be
> disseminated in order to determine their innocence.

H.R. Rep. No. 95-1283, pt. 1, at 58.  Indeed, at least one court has cautioned that,

when a United States person communicates with an agent of a foreign power, the

Government would be "remiss in meeting its foreign counterintelligence

responsibilities" if it did not thoroughly "investigate such contacts and gather

information to determine the nature of those activities." *Thomson*, 752 F. Supp.

at 82.

48

In light of these realities, Congress recognized that "no electronic surveillance can be so conducted that innocent conversations can be totally eliminated." *See* S. Rep. No. 95-701, at 39 (1978), 1978 U.S.C.C.A.N. at 4008 (quoting *United States v. Bynum,* 485 F.2d 490, 500 (2d Cir. 1973)).  The U.S. Court of Appeals for the Fourth Circuit reached the same conclusion in *Hammoud*, stating that the "mere fact that innocent conversations were recorded, without more, does not establish that the government failed to appropriately minimize surveillance." 381 F.3d at 334.

Accordingly, in reviewing the adequacy of minimization efforts, the test to be applied is neither whether innocent conversations were intercepted, nor whether mistakes were made with respect to particular communications.  Rather, as the United States Supreme Court stated in the context of Title III surveillance, there should be an "objective assessment of the [agents'] actions in light of the facts and circumstances confronting [them] at the time." *Scott v. United States*, 436 U.S. 128, 136 (1978).  "The test of compliance is 'whether a good-faith effort to minimize was made.'" *Mubayyid*, 521 F. Supp. 2d at 135; *see also Hammoud*, 381 F.3d at 334 ("[t]he minimization requirement obligates the Government to make a good faith effort to minimize the acquisition and retention of irrelevant information"); S. Rep. No. 95-701, at 39-40, 1978 U.S.C.C.A.N. at 4008-09 (stating that the court's role is to determine whether "on the whole, the agents have

49

shown a high regard for the right of privacy and have done all they reasonably could do to avoid unnecessary intrusion").

Moreover, as noted above, FISA expressly states that the Government is not required to minimize information that is "evidence of a crime," whether or not it is also foreign intelligence information. 50 U.S.C. §§ 1801(h)(3), 1821(4)(c); *see also Isa*, 923 F.2d at 1304 (noting that "[t]here is no requirement that the 'crime' be related to foreign intelligence"). As a result, to the extent that certain communications of a United States person may be evidence of a crime or otherwise may establish an element of a substantive or conspiratorial offense, such communications need not be minimized. *See Isa*, 923 F.2d at 1305.

Even if certain communications were not minimized in accordance with the standard minimization procedures, suppression would not be the appropriate remedy with respect to those communications that met the standard. *Cf. United States v. Falcone*, 364 F. Supp. 877, 886-87 (D. N.J. 1973), *aff'd*, 500 F.2d 1401 (3d Cir. 1974) (Title III). As discussed above, absent evidence that "on the whole" there has been a "complete" disregard for the minimization procedures, the fact that some communications should have been minimized does not affect the admissibility of others that were properly acquired and retained. FISA's legislative history reflects that Congress intended only a limited sanction for errors of minimization:

50

> As the language of the bill makes clear, only that evidence
> which was obtained unlawfully or derived from information
> obtained unlawfully would be suppressed. If, for example, some
> information should have been minimized but was not, only that
> information should be suppressed; the other information
> obtained lawfully should not be suppressed.

H.R. Rep. No. 95-1283, pt. 1, at 93; *see also Falcone*, 364 F. Supp. at 886-87;

*Medunjanin*, 2012 WL 526428, at *12 (disclosure and suppression not warranted

where "failure to adhere to [the minimization] protocol was *de minimis*").

### 2.   The FISA Information Was Appropriately Minimized [CLASSIFIED INFORMATION REDACTED]

Based upon this information, the Government respectfully submits that it

lawfully conducted the FISA collection discussed herein.  Consequently, for the

reasons stated above, the Court should find that the FISA collection discussed

herein was lawfully conducted under the minimization procedures approved by the

FISC and applicable to the FISA collection discussed herein.

## V.   THE COURT SHOULD REJECT NASER'S LEGAL ARGUMENTS

Naser's Motion asks this Court to: (1) compel the Government "to determine

if the Attorney General will submit an affidavit attesting that disclosure of FISA

applications, FISA orders, and other FISA materials in this case would harm

national security;" (2) provide Naser with "a copy of the Attorney General

affidavit, if filed;" (3) conduct an *in camera, ex parte* review of the FISA materials

to "determine whether the surveillance was lawfully authorized and appropriately

conducted;" (4) disclose any FISA materials "to defendant's counsel because such
disclosures are necessary to make an accurate determination of the legality of the
surveillance;" and (5) "[s]uppress all information unlawfully acquired or
surveillance conducted not in conformity with an order of authorization or
approval, and suppress any fruits of unlawfully surveillance or searches." (ECF
No. 73, PageID.377.)

As explained above, the Government is filing herewith an affidavit in which
the AAG/NS claims under oath that disclosure of the FISA materials or an
adversary hearing would harm the national security of the United States. *See*
50 U.S.C. §§ 1806(f); 1825(g). That affidavit is included in the public,
unclassified filing; and Naser will have access to it. Therefore, Naser's first and
second requests—for this Court to compel both the Government's filing
determination and disclosure of the affidavit—are moot. Further, the
Government's filing of the affidavit from the AAG/NS triggers the mandatory *in
camera*, *ex parte* review of the FISA materials that Naser seeks (*i.e.*, whether the
electronic surveillance and physical search at issue were lawfully authorized and
conducted), which the Government agrees is statutorily required. *See id.*
However, as the Court will see through its *in camera*, *ex parte* review of the FISA
materials, disclosure of the FISA materials is not necessary to make an accurate
determination of the legality of the electronic surveillance and physical search at

issue.  Similarly, upon *in camera*, *ex parte* review, the Court will see that the

electronic surveillance and physical search at issue were both lawfully authorized

and conducted.  Accordingly, as explained more fully below, Naser's demands for

disclosure of the FISA materials and suppression of the FISA information should

be denied.  *See id.*

> ### A.   Naser Has Not Established Any Basis for the Court to Disclose the FISA Materials

As acknowledged in Naser's Motion, "the court may disclose to the

aggrieved person [here, Mr. Naser], under appropriate security procedures and

protective orders, portions of the application, order, or other materials relating to

the surveillance <u>only where such disclosure is necessary</u> to make an accurate

determination of the legality of the surveillance."  (ECF No. 73, PageID.734

(quoting 50 U.S.C. § 1806(f)) (emphasis added).)  Notwithstanding this

acknowledgment, Naser nevertheless moves this Court to disclose FISA materials

without explaining, must less demonstrating, why this Court needs Naser's help to

determine the legality of the electronic surveillance and physical search at issue.

Instead, Naser merely asserts that the questions presented for the Court's *in*

*camera*, *ex parte* review are "complicated" and "should be evaluated with defense

input[,]" which is contrary to the statutory provisions quoted.  (*Compare* ECF

No. 73, PageID.376 ("should be evaluated with defense input"), *with* 50 U.S.C.

§ 1806(f) ("the court may disclose . . . only where such disclosure is necessary)

and *Abu-Jihaad*, 630 F.3d at 129 ("conclud[ing] that disclosure of FISA materials 'is the exception and *in camera, ex parte* determination is the rule'").)

As the *Belfield* court stated: "Congress was adamant, in enacting FISA, that [its] 'carefully drawn procedure[s]' are not to be bypassed." 692 F.2d at 146 (citing S. Rep. No. 95-701, at 63). This holding is fully supported by the legislative history of 50 U.S.C. § 1806(f), which states: "The court may order disclosure to [the defense] only if it finds that such disclosure is necessary to make an accurate determination of the legality of the surveillance . . . . Once a judicial determination is made that the surveillance was lawful, a motion for discovery . . . must be denied." S. Rep. No. 95-701, at 64-65, 1978 U.S.C.C.A.N. at 4034.

The Government respectfully submits that this Court is capable of determining the lawfulness of the FISA collection at issue *in camera, ex parte*, and without the assistance of Naser's counsel, just as every other district court that has been presented with a similar review has done. As noted above, even the sole district court that initially ordered disclosure of the FISA materials also concluded that it was capable of making the lawfulness determination. *See Daoud*, 2014 WL 321384 at *3. On interlocutory appeal of *Daoud*, the Seventh Circuit clarified FISA's "explicit" review requirements (after the submission of the Attorney General's affidavit) by stating: "The statue requires the judge to review the FISA materials *ex parte, in camera* in *every* case, and on the basis of that review decide

54

whether any of those materials must be disclosed to defense counsel." *Daoud*, 755

F.3d at 481-82. The Seventh Circuit contrasted the district court's initial finding

that disclosure "may be necessary" with the statutorily required finding, after *ex*

*parte*, *in camera* review, that disclosure of specific materials was in fact necessary,

explaining:

> Although the [district judge] read the FISA materials and
> concluded that she was "capable of making [an accurate]
> determination . . . of the legality of the surveillance," she
> refused to make the determination, which if she was right in
> thinking she could make an accurate determination would have
> obviated the necessity for—and therefore the lawfulness of—
> disclosure of the classified materials to defense counsel.

*Id.* at 482. Before reversing the district court's order without remand, the Seventh

Circuit concluded: "Not only do we agree with the district judge that it is possible

to determine the legality of the government's investigation of Daoud without

disclosure of classified materials to his lawyers; our study of the materials

convinces us that the investigation did not violate FISA." *Id.* at 485.

Here, Naser is asking this Court to similarly depart from FISA's explicit

necessity requirement. Specifically, Naser's Motion argues that the legality of the

FISA surveillance "should be evaluated with defense input" because this case

involves "complicated questions[.]" (ECF No. 73, PageID.376.) Although Naser's

Motion lists "multiple questions" for the Court's consideration, what is missing is

any argument why this Court would be unable to answer the very same questions

regarding probable cause, particularity, and the like, that every other district court

has been able to resolve.  (ECF No. 73, PageID.375-76.)  As this Court will see

from its review, the FISA materials are presented in a well-organized and

straightforward manner that will allow the Court to make its determination of the

lawfulness of the FISA collection without input from Naser's counsel.

Therefore, Naser has failed to present any colorable basis for disclosure, as

this Court will be able to review and make a determination as to the legality of the

FISA collection without the assistance of Naser's counsel.  Where, as here, defense

participation is not necessary, FISA requires that the FISA materials remain

protected from disclosure.  Congress' clear intention is that FISA materials should

be reviewed *in camera* and *ex parte* and in a manner consistent with the realities of

modern intelligence needs and investigative techniques.  There is simply nothing

extraordinary about this case that would prompt this Court to order the disclosure

of highly sensitive and classified FISA materials.

**B.     Naser Has Not Established Any Basis for the Court to Suppress
the FISA Information**

Like his request to disclose the FISA materials, Naser's request to suppress

the FISA information should be denied because it is based on speculation and a

misunderstanding of the applicable legal standards.  Naser speculates that the

Government "had apparently labeled [him] an agent of a foreign power" under

FISA, "and thus subjected him to surveillance and searches outside the confines of

the Fourth Amendment" while he was in the custody of the Michigan Department

of Corrections.  (ECF No. 73, PageID.372.)

### [CLASSIFIED INFORMATION REDACTED]

Paired with this speculation, Naser quotes language describing examples of

hypothetical "irregularities" that could be revealed in an *in camera*, *ex parte*

review of FISA materials.  (ECF No. 73, PageID.374-75 (quoting *United States v.*

*Mahamud*, 838 F. Supp. 2d 881, 885 (D. Minn. 2012).)  However, Naser does not

identify or plausibly allege any particular examples of irregularities in this case,

nor does he hypothesize how his counsel could assist this Court if possible

irregularities were found.  Moreover, Naser fails to allege any particular grounds to

believe that the electronic surveillance and physical search at issue either acquired

information unlawfully or were not conducted in conformity with the orders of the

FISC, apparently assuming that the Court's review of the FISA materials will

generate the required legal basis to support Naser's Motion.

Insofar as Naser's Motion suggests that the FISA materials should be

disclosed to allow him to make a cognizable legal argument about the Court's need

for his assistance, such circular argument should be rejected for two reasons.  First,

disclosure of the FISA materials to defense counsel is authorized only after the

Court conducts its review of FISA materials *in camera* and *ex parte*, and only if

the Court is unable to determine the legality of the electronic surveillance and/or physical search without the assistance of defense counsel.

Second, Naser is not entitled to the FISA materials for the purpose of educating his challenge to the lawfulness of the FISA authorities, as FISA's plain language precludes defense counsel from accessing the classified FISA materials to conduct a fishing expedition.  In *Medunjanin*, the court noted that "[d]efense counsel . . . may not inspect the FISA dockets to construct a better argument for inspecting the FISA dockets.  Such a circular exercise would be patently inconsistent with FISA . . . ."  2012 WL 526428, at *10.  *See also Badia*, 827 F.2d at 1464 (rejecting a defendant's request for "disclosure of the FISA application, ostensibly so that he may review it for errors"); *United States v. Mohamud*, No. 3:10-CR-00475-KI-1, 2014 WL 2866749, at 32 (D. Or. June 24, 2014) ("Obviously it would be helpful to the court to have defense counsel review the materials prior to making arguments.  Congress, however, did not put 'helpful' in the statute; it chose 'necessary.'"); *Mubayyid*, 521 F. Supp. 2d at 131.

### [CLASSIFIED INFORMATION REDACTED]

#### 1.    The Government Satisfied the Applicable "Significant Purpose" Standard

In his motion, Naser quotes the Seventh Circuit's summary of an appellant argument that was <u>rejected</u> by the Seventh Circuit to assert that this "Court must determine whether the primary purpose of the surveillance was 'domestic criminal

activity, which is not authorized by FISA.'" (ECF No. 73, PageID.375 (quoting *United States v. Daoud*, 761 F.3d 678, 682 (7th Cir. 2014).) Naser also cites from a 1991 opinion from the U.S. Court of Appeals for the First Circuit to bolster his argument that "'the investigation of criminal activity cannot be the primary purpose of the [FISA] surveillance.'" (ECF No. 73, PageID.375 (quoting *United States v. Johnson*, 952 F.2d 565, 572 (1st Cir. 1991).) Naser's legal argument is outdated and incorrect.

As part of the USA PATRIOT Act, Congress amended FISA to require that an Executive Branch official now certify only that "a significant purpose" of the requested surveillance was to obtain foreign intelligence information. 50 U.S.C. § 1804(a)(6)(B). Naser's Motion does not challenge the reasonableness of the current "significant purpose" standard, it simply cites an outdated thirty-year-old case and misstates the applicable standard even though it has been repeatedly upheld, including by another district court in the Sixth Circuit. In *Mohammad*, the district court rejected the defendants' claim that decisions upholding the constitutionality of the "significant purpose" test should be revisited in light of public disclosures regarding Government surveillance programs. *Mohammad*, 339 F. Supp. 3d at 739. The district court ruled that the Sixth Circuit's decision in *Damrah* continued to be controlling precedent and foreclosed the defendants' Fourth Amendment challenge. *See id.* (citing *Damrah*, 412 F.3d at 625).

Even if Naser's Motion was construed as a constitutional challenge to the current "significant purpose" standard, every court that has addressed this issue has found the significant purpose test to be reasonable under the Fourth Amendment. *See, e.g., Damrah*, 412 F.3d at 625 (concluding that a defendant's constitutional challenge to FISA's procedures "lack[ed] merit, as FISA has uniformly been held to be consistent with the Fourth Amendment"); *Duka*, 671 F.3d at 343 ("We agree with our sister courts of appeals and the Foreign Intelligence Surveillance Court of Review that the amended FISA's 'significant purpose' standard is reasonable under the Fourth Amendment."); *Abu-Jihaad,* 630 F.3d at 131 ("[W]e identify no constitutional infirmity in Congress's decision to allow FISA warrants to issue on certification of a 'significant purpose' to obtain foreign intelligence information . . . ."); *Ning Wen*, 477 F.3d at 897; *In re Sealed Case,* 310 F.3d at 746; *Mubayyid,* 521 F. Supp. 2d at 139; *Marzook*, 435 F. Supp. 2d at 786; *Benkahla*, 437 F. Supp. 2d at 554.

Moreover, more recent authorities cited in Naser's own Motion confirm the application of the "significant purpose" standard. (*Compare* ECF No. 73, PageID.374, 376 (citing *Daher*), *with Daher*, 2020 WL 7664789, at *3 (explaining that "[t]he certification is used to ensure that a significant purpose of the surveillance or search is to obtain foreign intelligence information"); *compare* ECF No. 73, PageID.375 (citing *Mahamud*), *with Mahamud*, 838 F. Supp. 2d at 888

60

("Based on the applicable law, the Court is satisfied that FISA's significant purpose requirement is consistent with the Fourth Amendment's protections against unreasonable searches and seizures."); *compare* ECF No. 73, PageID.376 (citing *Warsame*), *with Warsame*, 547 F. Supp. 2d at 994-95 (although expressing constitutional concerns with the significant purpose standard, the court nonetheless acknowledged the statutory change in standard and upheld its constitutionality as applied to the case before it).)

**[CLASSIFIED INFORMATION REDACTED]**

Even under the "primary purpose" standard, courts "refuse[d] to draw too fine a distinction between criminal and intelligence investigations." *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988). The fact that "the government may later choose to prosecute is irrelevant," as "FISA contemplates prosecution based on evidence gathered through surveillance" to secure foreign intelligence information. *Id.*

> **2.      The Government Satisfied the Certification Requirements and Normal Investigative Techniques Standards**

**[CLASSIFIED INFORMATION REDACTED]**

> **3.      The Government Satisfied the Probable Cause Standard**

**[CLASSIFIED INFORMATION REDACTED]**

FISA requires a finding of probable cause to believe that the target of the electronic surveillance or physical search is a foreign power or the agent or a

foreign power. *See* 50 U.S.C. §§ 1805(a)(2)(A), 1824(a)(2)(A). "Probable cause

means more than bare suspicion but less than absolute certainty[,]" and in making

the probable cause determination, FISA permits a judge to "consider past activities

of the target, as well as facts and circumstances relating to current or future

activities of the target." *Rosen*, 447 F. Supp. 2d at 549 (quoting *Mason v. Godinez*,

47 F.3d 852, 855 (7th Cir. 1995) and 50 U.S.C. § 1805(b)). Furthermore, the FISA

probable cause standard "does not necessarily require a showing of an imminent

violation of criminal law" because Congress clearly intended a different showing

of probable cause for these activities than that applicable to ordinary cases. *Id.*

at 549 (quoting *In re Sealed Case*, 310 F.3d at 738).

Although some federal circuits have afforded due deference to the probable

cause determinations of the FISC, the Sixth Circuit has not resolved whether the

FISC's probable cause determinations are reviewed with due deference or *de novo*,

and at least some district courts in this circuit have proceeded under a *de novo*

review. *See Daher*, 2020 WL 7664789, at *3-4 (finding sufficient probable cause

under a *de novo* review); *Mohammad*, 339 F. Supp. 3d at 736, 740 (affirming the

FISC's probable cause determination under a *de novo* review); *but see Abu-Jihaad*,

630 F.3d at 130; *Stewart*, 590 F.3d at 128; *cf. Medunjanin*, 2012 WL 526428,

at *6-7 (affording deferential review, but noting that such review is not

superficial); *accord Ahmed*, 2009 U.S. Dist. LEXIS 120007, at *21-22 (the FISC's

"determination of probable cause should be given 'great deference' by the reviewing court") (citing *Gates*, 462 U.S. at 236).

**[CLASSIFIED INFORMATION REDACTED]**

Moreover, to the extent that Naser's caution that "FISA 'is not to be used as an end-run around the Fourth Amendment's prohibition of warrantless searches'" is construed as a constitutional challenge to FISA's probable cause standard, this challenge is unpersuasive. (ECF No. 73, PageID.373.) As discussed in detail above, *see* discussion *supra* Sections III.B.2., V.B.1., the probable cause threshold that the Government must satisfy before receiving authorization to conduct electronic surveillance and physical search under FISA complies with the Fourth Amendment's reasonableness standard. Arguments that FISA's different probable cause standard violates the Fourth Amendment have been uniformly rejected by federal courts. *See, e.g., Abu-Jihaad*, 630 F.3d at 120 (listing sixteen cases that have ruled FISA does not violate the Fourth Amendment).

### 4. The Government Satisfied the Particularity Requirement

Naser's Motion states that "FISA demands particularity" in the Government's showing that "'each of the facilities, places, premises, or property at which the electronic surveillance or physical search was directed was, or was about to be owned, used, possessed by, or was in transit to or from [Mr. Naser].'" (ECF No. 73, PageID.376.) More precisely, FISA requires, among other things, a

finding of probable cause to believe that each of the facilities or places at which the electronic surveillance is directed is being used, or about to be used by a foreign power or an agent of a foreign power; and each of the premises or property to be physically searched was, or was about to be, owned, used, possessed by, or was in transit to or from, a foreign power or an agent of a foreign power. *See* 50 U.S.C. §§ 1805(a)(2)(B), 1824(a)(2)(B).  Again, without specifying the basis for the assumed lack of particularity, Naser simply characterizes this review as a "complicated" question.  (ECF No. 73, PageID.375-76.)

**[CLASSIFIED INFORMATION REDACTED]**

> **5.    The Court Should Not Second-Guess Whether the Need for Secrecy Still Exists**

Naser also urges the Court to determine whether the need for secrecy asserted by the AAG/NS, based on a classified declaration of an FBI Assistant Director, still exists.  (*See* ECF No. 73, PageID.376 (asserting that "this Court must determine whether that need for secrecy still exists").)  This second-guessing of the Government's claim of national security privilege is contrary to the language of FISA and *Warsame*, which Naser cites as support.  First, the plain language of FISA does not invite, much less require, a district court to validate the continued need for secrecy to protect the national security of the United States.  To the contrary, once the Attorney General, as defined by 50 U.S.C. § 1801(g), "files an affidavit under oath that disclosure or any adversary hearing would harm the

national security of the United States," FISA directs the *in camera, ex parte* review of the FISA materials without prior disclosure to the aggrieved party. 50 U.S.C. §§ 1806(f), 1825(g). As discussed above, *see* discussion *supra* Sections III.A., V.A., FISA contemplates only two instances where post-review disclosure is permitted: (1) the reviewing court, if otherwise unable to determine the legality of the FISA collection, *may disclose* under appropriate safeguards *only those portions* of the FISA materials *necessary* for the aggrieved party to render the required assistance; and (2) the reviewing court *must* permit disclosure "to the extent that due process requires discovery or disclosure[,]" which courts have construed *narrowly* to mean as required under *Brady v. Maryland*, 373 U.S. 83 (1963). 50 U.S.C. §§ 1806(f)-(g), 1825(g)-(h) (emphasis added); *see Mohammad*, 339 F. Supp. 3d at 737. Contrary to Naser's suggestion, neither circumstance provides for disclosure if a reviewing court disagrees with the Attorney General's claim of national security privilege under 50 U.S.C. § 1801(g).

Second, the *Warsame* court treated "the filing of an Attorney General affidavit" as "trigger[ing] an *in camera, ex parte* procedure . . . ." 547 F. Supp. 2d at 987. Once triggered, the court engages in a determination whether the FISA collection before it was lawfully authorized and conducted—it does not engage in a process of validating the substance of an Attorney General affidavit as it pertains to the continued need for secrecy to protect the national security of the United

States.[18]  To the extent that the *Warsame* court discussed the substance of the

Attorney General affidavit, it did so in the context of a due process challenge to the

constitutionality of the FISA proceedings.  *Id.* at 988-89.  Naser has articulated no

such challenge to the constitutionality of the FISA process, and to the extent

Naser's Motion raises such a challenge, the Government addressed the

constitutionality of the FISA process above.  *See* discussion *supra* Section III.A.2.

## VI.   CONCLUSION: THERE IS NO BASIS TO DISCLOSE THE FISA MATERIALS OR SUPPRESS THE FISA INFORMATION

Based on the foregoing analysis, the Government respectfully submits that

the Court must conduct an *in camera, ex parte* review of the FISA materials and

the Government's classified submissions, and should: (1) find that disclosure of the

FISA materials and the Government's classified submissions to Naser is not

authorized because the Court is able to make an accurate determination of the

legality of the surveillance and searches without disclosure; (2) find that the

---

[18]  As the Government discussed at length above, *see* discussion *supra* Section III.A.1, courts have traditionally afforded due deference to the Attorney General's affidavit concerning the potential harm to the national security of the United States from the disclosure of FISA materials.  Similarly, courts have afforded due deference to the Government's assertions regarding the need to protect classified national security information.  *See United States v. Zubaydah*, 595 U.S. 195, 205 (2022) (explaining in the context of the state secrets privilege that while courts cannot abdicate their proper role concerning the evidence in a case, "[n]onetheless, in assessing the Government's claim that disclosure may harm national security, courts must exercise the traditional 'reluctan[ce] to intrude upon the authority of the Executive in military and national security affairs'") (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)).

electronic surveillance and physical search at issue were both lawfully authorized and conducted in compliance with FISA; (3) hold that the fruits of the electronic surveillance and physical search should not be suppressed; and (4) order that the FISA materials and the Government's classified submissions be maintained under seal by the Classified Information Security Officer or his or her designee.[19]

Respectfully submitted,

DAWN N. ISON
United States Attorney

/s/ *Saima S. Mohsin*
SAIMA S. MOHSIN
Assistant United States Attorney

/s/ *Dmitriy Slavin*
DMITRIY SLAVIN
Trial Attorney
National Security Division

Date:  November 30, 2023

---

[19] A district court order granting motions or requests under 50 U.S.C. §§ 1806(g) or 1825(h), a decision that electronic surveillance or physical search was not lawfully authorized or conducted, and an order requiring the disclosure of FISA materials are each a final order for purposes of appeal. *See* 50 U.S.C. §§ 1806(h), 1825(i).  Should the Court conclude that disclosure of any item within any of the FISA materials or suppression of any FISA-obtained or -derived information may be required, given the significant national security consequences that would result from such disclosure or suppression, the Government would expect to pursue an appeal.  Accordingly, the Government respectfully requests the Court stay any such order pending an appeal by the United States of that order.