UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                           CR. NO. 22-20504

v.                                     Hon. Jonathan C. Grey

AWS NASER,

          Defendant.

### Supplemental Brief for ECF Nos. 94, 117 and 137

---

## I.    ECF No. 94: Motion to Suppress TFO Wright's Searches/Seizures

The evidentiary hearing proved that TFO Wright acted as an agent for the FBI. His actions were undertaken in order to allow the FBI to warrantlessly surveille Aws Naser and search his home, not to further any legitimate parole objective of the MDOC.[1] The FBI used Naser's MDOC parole status to circumvent the Fourth Amendment, in furtherance of its investigation of him. TFO Wright – before he was Naser's assigned parole agent – searched and photographed Naser's home, sent those photos immediately to the FBI[2], and seized not one, but two of Naser's cellphones (*Id.* at 1664-

---

[1] While Wright and the MDOC ultimately did file 50 violations of Naser's parole, *none* of them flowed from Naser's cell phones. Rather, most of them flowed from the FBI: TFO McAteer sent a "grocery list" of reports to Wright, five days before Naser's home was searched and he was taken into custody (ECF No. 174-1 (emails)).
[2] Agent O'Donnell testified TFO Wright searched Naser's home and phone, and emailed photos of both to O'Donnell the same days he took them (ECF 185, PageID.2097-98.)

66) – all without any legitimate parole purpose. Indeed, much of the information Wright collected never made it into Naser's MDOC file. (*Id.* at 1751.)

The totality of the circumstances supports suppression. *See Samson v. California,* 547 U.S. 843, 848 (2006).

### A. TFO Wright's seizure and subsequent forensic analysis of Naser's iPhone and LG phone violated Naser's Fourth Amendment right against unreasonable seizures.

Even if this Court finds TFO Wright could look through Mr. Naser's phones at his home, Michigan's Parole Condition 4.2 did not permit the unreasonable seizure and warrantless forensic examination of Naser's cellphones.[3] The Fourth Amendment protections against unreasonable searches and seizures implicate different rights. "A search comprises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Horton v. California*, 496 U.S. 128, 133 (1990). "Although the interest protected by the Fourth Amendment injunction against unreasonable searches is quite different from that protected by its injunction against unreasonable seizures, neither the one nor the other is of inferior worth or necessarily

---

[3] Even if this Court finds that individual MDOC parole agents did not behave harassingly towards Naser, it should find that the FBI used Naser's parole to harass him. And while Naser acknowledges the seizure and search of his phones took place in May and August 2017, the surrounding circumstances are relevant. To the extent the Court must make reasonable inferences about the context of those seizures, the Court can and should consider the FBI's pattern of harassment – from their attempt to secure his anticipated deportation in 2016, through to their successful effort to have his parole release revoked in 2020 and his parole reconsideration delayed until after Oct. 30, 2022. A timeline of relevant events is attached as "Timeline Exhibit."

requires only lesser protection." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987). The Supreme Court has repeatedly held "in the absence of consent or a warrant permitting the seizure of the items in question, [] seizures can be justified only if they meet the probable-cause standard." *Sodal v. Cook County, III*, 506 U.S. 56, 66 (1992) (citing *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987)). This is true even where privacy or liberty are not implicated. *Id.* at 65.

The government characterizes Wright's seizure of Naser's phones and the forensic search of his iPhone as "routine" (ECF 105, PageID.1002), and in doing so, blurs the line between a Fourth Amendment justification for the parole search and the independent Fourth Amendment inquiry required for the *seizure* of Naser's property. Unlike *Samson*, where the defendant's parole condition permitted the "search or seizure by a parole officer or other peace officer" (*Samson v. California*, 547 U.S. 843, 843 (2006)), Naser was only required to provide written consent to search of his person or property (ECF No. 97-2 (sealed).)

Even if this Court finds Naser's diminished expectation of privacy and liberty made the parole *search* reasonable, Naser's possessory interest in his property remain intact, and the seizure was unjustified. Without probable cause or an exception to the warrant requirement – neither of which is at all supported by Wright's testimony – Wright could not seize either phone. The deprivation of Mr. Naser's property is all the more offensive here, where the phones were not seized for any legitimate parole purpose. The iPhone extraction was sent directly to the FBI (ECF 170, PageID.1667.) Mr. Naser's parole

agent at the time of Wright's seizure of the iPhone, Derrick Bond, never reviewed the extraction report (*Id.*) When TFO Wright seized Mr. Naser's LG phone in August 2017, he held it as an FBI agent until it was delivered to TFO McAteer (ECF 170, PageID.1670, 1672.) Wright admitted he put much of the information he discovered about Naser in Naser's FBI file because he felt it was too sensitive for Naser's MDOC file (ECF 170, PageID.1751.) This included the extraction of the LG phone – which Wright may or may not have received. (ECF 170, PageID.1672, 1677-78.)

The Sixth Circuit has also drawn a clear line between the scope of a search of electronic devices in a residence based on some Fourth Amendment justification and the removal and forensic search of those electronic devices. *United States v. Lewis*, 81 F.4th 640, 653 (6th Cir. 2023) ("[] officers reached the limit of Lewis's consent once they terminated the consent search, arrested Lewis, and left his home to obtain a search warrant … Lewis's consent did not authorize the seizure and forensic examination of his devices"). The government's reliance on *United States v. Davis*, 2021 WL 3473246, at*2 (E.D. Mich. Aug. 6, 2021) is unavailing. In *Davis*, an unpublished district court opinion that predates *Lewis*, the phones, seized incident to arrest, were not searched by state officers prior to the FBI securing a warrant to obtain and forensically search the phones. In light of *Lewis*, it cannot be argued the seizure of Mr. Naser's phone and holding it for a forensic search of the phone was a mere continuation of the MDOC parole search.

### 1.    Consent does not support the warrantless seizure.

Naser's consent to the parole search was not voluntary. The government argues

the Court need not rely on consent in deciding Naser's motion to suppress, it asserts

consent would serve as a justification for the searches (and presumably seizures) in this

case (Gov't Resp., ECF 105, PageID.1026.) The government offers little to no support

for this conclusion. But while the consent to search issue has been thoroughly briefed

by both parties, the issue of consent is further complicated by the seizure issue in this

case. Parole Condition 4.2 did not extend to the warrantless seizure of Naser's

cellphones, nor did Naser give Wright or any other law enforcement agent consent to

seize and forensically search his cellphones.

During the May 19, 2017 home visit, TFO Wright obtained Naser's iPhone,

asking Naser to hand it over to check for child pornography (ECF 170, PageID.1664-

65.) Naser complied with this request even though he was not subjected to any sex

offender conditions at the time (*Id.*), or electronic monitoring or device monitoring

conditions (*Id.* at 1652.) Wright repeated this process with the LG phone during the

August 16, 2017, home visit (*Id.* at 1669-70.) Naser did not consent to the seizure of his

phones or their subsequent forensic search.[4] "The standard for measuring the scope of

a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness."

---

[4] Wright was not sure whether he obtained an ICAC report on the LG phone before turning it over to the FBI, though he does not recall reviewing a secondary ICAC report (ECF 170, PageID.1670-72.)

*Florida v. Jimeno*, 500 U.S. 248, 251 (1991). The court determines what a reasonable person would have understood the scope of their consent to be by looking at the "expressed object" of the search or seizure. *Id.* Anyone hearing Wright's request would understand it to encompass only a search for child pornography as part of the MDOC parole search occurring that day. The Sixth Circuit's holding in *Lewis* makes it clear that Naser's alleged consent for Wright to search his iPhone during the home visit could not be objectively understood by a reasonable person to extend to the seizure and forensic examination of his electronic devices. *United States v. Lewis*, 81 F.4th 640, 652-53 (6th Cir. 2023).

### 2.    Plain view does not support the warrantless seizure.

The government alleges parole agents, including TFO Wright, conducted plain view searches of Naser's cellphones, and one forensic search of Naser's iPhone during routine visits (Gov't Resp., ECF 105, PageID.1002.) "The plain-view doctrine permits certain warrantless seizures, not searches." *Lewis*, 81 F.4th at 654 (citing *Hopkins v. Nichols*, 37 F.4th 1110, 1118 (6th Cir. 2022)). The record contains zero indication that Wright seized the two phones because he found their "incriminating character []  immediately apparent." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Nor is it clear if Wright was even in a lawful position to access the May iPhone, as he was not Naser's assigned parole agent at the time of seizure (ECF 170, PageID.1663.) Without making a showing the phones' "incriminating character" was "immediately apparent" and that the incriminating nature of the items was in plain view, the government cannot rely on

the plain view doctrine to justify the seizures in this case. *Horton v. California*, 496 U.S. 128, 136 (1990). Nor can the plain-view doctrine provide justification for the warrantless seizure of the phones because Wright needed "some other Fourth Amendment justification to complete forensic examination of the devices" *Lewis*, 81 F.4th at 654.

Even if the Court finds TFO Wright's in-home search of Naser's phones was permissible, TFO Wright had no lawful basis to seize Naser's iPhone or LG phone, and their contents and the fruits thereof should be suppressed.

### B. Requiring Naser to provide his phone passcodes violated his Fifth Amendment rights.

The Fifth Amendment protects an individual from being "compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. Wright asked Naser to provide his passcodes, so he could search the phones while at Naser's home and more importantly, so that he could have the phones forensically analyzed (ECF 170, PageID.1669-70.) By asking Naser for his passcode, Wright asked him to "disclose the contents of his own mind," which is "contrary to the spirit and letter of the Fifth Amendment." *Curcio v. United States*, 354 U.S. 118, 128 (1957).

Even if TFO Wright could ask Mr. Naser to unlock his phones to be reviewed in the home, there is no justification for the violation of his Fifth Amendment rights that revealed his passcodes and allowed the later forensic examinations. Because the

7

subsequent forensic analysis of both phones relied on these passcodes obtained in violation of the Fifth Amendment, the evidence from the phones must be suppressed.

**II.    ECF No. 117: Suppression for Flagrant Disregard of Warrant Exception**

### A. The protective sweep that occurred prior to the execution of the October 30, 2017 search warrant far exceeded constitutional parameters and further violated Naser's Fourth Amendment rights.

The October 30, 2017 search warrant did not authorize a sweep for explosives, but the FBI did one on the basis of safety. But Davidson and Haug were not the first agents to enter Naser's home before the search warrant was executed (ECF 170, PageID.1793.) MDOC and FBI agents interviewed Naser before the protective sweep (ECF 171, PageID.1862), then Naser was taken into MDOC custody for parole violations (*Id.* at 1864.) After Naser's arrest, an "entry team went in, did a quick clear of the house for people, and at that point the SABT did [their] safety sweep" (ECF 171, PageID.1864.) By the time the safety sweep began, the traditional purpose of a protective sweep was fulfilled.

"[A] protective sweep [] is not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger…" *Maryland v. Buie*, 494 U.S. 325, 335-336 (1990). While *Buie* was concerned with searches incident to the arrest of a person within the home, its principles are instructive in this case. The protective sweep of Naser's home far exceeded constitutional parameters in time, in scope, and in purpose.

Davidson and Haug spent twenty to thirty minutes effectively searching Naser's entire home under the guise of a protective sweep (ECF 185, PageID.2034) (ECF 170, PageID.1802.) Their testimony makes it clear that both Davidson and Haug believed they had carte blanche to look through every area of the home, including the rooms expressly excluded by the search warrant.[5] Indeed, Davidson stated he would look at *anything* he believed could harbor a hazard (ECF 170, PageID.1791.) Haug echoed this sentiment, stating the protective sweep was "intended [] to be as thorough as necessary to ensure the safety of others" (ECF 185, PageID.2033.) Not even the express limitations of the search warrant curtailed the scope of Davidson and Haug's actions.

Agent Sucevic, the on-scene supervisor during the execution of the search warrant, described the difference in purpose between the protective sweep and search as "[Haug] is just looking for anything that might be harmful to anybody searching, so he is doing a quick search through. The search team is actually [] going through drawers, going through closets. It's a much more exhaustive process than the safety sweep" (ECF 171, PageID.1864.) But Haug looked within closets and opened drawers (ECF 185, PageID.2038.) Davidson would have looked through the washer and dryer in the basement (ECF 170, PageID.1810), and did open "drawers [and] cupboards" (ECF 170, PageID.1788.) The *only* meaningful difference between the protective sweep and the

---

[5] Haug understood the rooms were excluded and searched at least one of the excluded rooms (ECF 185, PageID.2047-48.) Davidson explains the search warrant exclusions did not impact his actions in the protective sweep (ECF 170, PageID.1791.)

subsequent search was whether evidence was seized or saved for later. It cannot be said

the protective sweep was carried out in compliance with the Fourth Amendment.

### B. Testimony confirmed the flagrant disregard for the limitations of the search warrant making blanket suppression necessary.

SABT Haug entered one of the excluded rooms during the protective sweep[6] (ECF

185, PageID.2033), where he looked throughout the room, within the closet, inside the

trashcan, and opened every drawer in the dresser (ECF 185, PageID.2038-39.) Haug

found what was proved to be a BB gun in one of the drawers (*Id.* at 2038), and it was

seized during the search (*Id.* at 2039.) The exclusion of the room from the search

warrant means it should not have been entered at all. The room's inclusion in the

protective sweep, and then again in the search, demonstrated flagrant disregard for the

limitations of the search warrant and blanket suppression is necessary. *See* ECF 117,

Defendant's Motion for Blanket Suppression.

### III.   ECF No. 137: Suppression of Naser's January 2013 Statements

The defense rests on its prehearing brief regarding and the hearing testimony.

---

[6]   Consent was provided by a tenant for the other excluded room (ECF 171, PageID.1863), but neither Haug nor Davidson could say whether that room was swept. Haug stated he did not search the second excluded room (ECF 185, PageID.2050.) Davidson stated he cleared the basement, while Haug cleared upstairs (ECF 170, PageID.1786-87.) Haug and Davidson were the only two SABTs who swept the residence (ECF 185, PageID.2049.)

Respectfully Submitted,

s/ Amanda Bashi
**FEDERAL COMMUNITY DEFENDER**
613 Abbott Street, Suite 500
Detroit, Michigan 48226
313-967-5542

/s James R. Gerometta
Law Office of James R. Gerometta
27 E. Flint St., Suite 2
Lake Orion, MI 48362
313-530-9505

Dated:  September 26, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the parties of record.

Signed,

s/Amanda N. Bashi

Dated:  September 26, 2024

12