UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                CR. NO. 22-20504

v.                                   Hon. Jonathan C. Grey

AWS NASER,                MJ Hon. David R. Grand

        Defendant.

**BRIEF IN SUPPORT OF AWS NASER'S ORAL MOTION FOR REVOCATION OF DETENTION ORDER AND REQUEST FOR UNCONDITIONAL RELEASE FROM MDOC CONFIMENT**

## I.    INTRODUCTION

Aws Naser is charged in a two-count indictment with attempting to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. §2339B; and felon in possession of a destructive device, in violation of 18 U.S.C. §922(g)(1). He initially consented to detention because he is serving an undischarged state sentence. Since that time, he has discovered that the Michigan Parole Board denied him parole not as an independent exercise of discretion, but rather at the behest of the Department of Justice.

Mr. Naser asks this Court to enter an order releasing him on this case and issue a report and recommendation that the district court enter an order under the All Writs Act directing the State of Michigan to release him. 28 U.S.C. §1651.

1

## II.     AWS NASER'S BACKGROUND

Aws Naser was born in Iraq. When he was eleven years old, his family immigrated to the United States as refugees. He became a United States citizen in 2006. In 2008, when he was twenty years old, Mr. Naser made the decision to serve his country by volunteering to work as a translator for the military in Iraq. While embedded with a Marine Corps unit, he was wounded and suffered a broken leg. He was evacuated to a military hospital in Germany and then returned to the United States.

After recovering, Mr. Naser worked and attended college, studying computer science. He married and had three children. After severing employment at a gas station, Mr. Naser got into a dispute over his final paycheck. During this argument he fought with a former co-worker, who he pepper sprayed, and took money from the register. This resulted in his conviction for armed robbery.

Mr. Naser is currently divorced, but still has regular contact with his three children. Mr. Naser has significant family in the metro-Detroit area, including a brother with whom he can live when released on bond.

## III.    MDOC DETAINED NASER AT THE REQUEST OF THE FBI

On January 7, 2014, the Sixth Circuit Court in Oakland County, Michigan sentenced Aws Naser to 3 to 20 years in the Michigan Department of Corrections based on a conviction to Robbery—Armed, in violation of MCL 750.529. Mr. Naser was initially paroled on January 3, 2016. He was returned to custody on October 31, 2017, due to parole violations.

On January 2, 2020, Mr. Naser was granted release to a 24-month parole term without a hearing, effective February 6, 2020. Ex. A, Notice of Decision, mailed 1.8.2020. Though this decision was signed by two members of the Michigan Parole Board, Anthony King and Brian Shipman, Mr. Naser was not released.

On January 21, 2020, Michael Eagen, then Chairperson of the Michigan Parole Board sent a memo to Mr. Naser's file indicating that a psychological evaluation was required before his release. Ex. B, Memo of Michael Eagen. On January 24, 2020, the decision to release Mr. Naser was officially suspended by a Notice of Decision. The Notice of Decision indicated the Parole Board had received new information regarding Mr. Naser and that information was attached to the document. Ex. C, Notice of Decision, mailed January 25, 2020. It was not.

The MDOC conducted a psychological evaluation of Mr. Naser on February 11, 2020. The purpose of that evaluation was to:

> DETERMINE THE EXTENT ANTISOCIAL THINKING BEHAVIOR AND PRO-SOCIAL THINKING/ASPIRATIONS. DETERMINE EXTEND AND NATURE OF THE SUPPORT NETWORK AND SIGNIFICANT SOCIAL INFLUENCES. DETERMINE TEMPERAMENT, EXTENT OF IMPULSE CONTROL AND SELF-REGUALTION SKILLS.

Ex. D, MDOC Evaluation, p. 1.

That evaluation found no evidence of serious mental health issues and no "clinically significant antisocial thinking patterns." Id., p. 2. Mr. Naser "often presented with prosocial thinking patterns" and as an individual with competent self-regulation[.]"

Id. Mr. Naser had "a realistic expectation" regarding future education and "a positive and realistic outlook on his housing situation." Id. p. 1.

Despite his positive psychological evaluation, the Parole Board denied Mr. Naser parole on March 11, 2020. The official reason for the denial was his need to complete a domestic violence program. Ex. E, Notice of Decision, mailed 3.17.2020. A duplicate of this decision was mailed on again on March 24, 2020. Ex. F, Notice of Decision, mailed 3.24.2020.

Mr. Naser never received a clear answer regarding why his parole was rescinded and he was required to take a domestic violence course. He hired the law firm of Lewis and Dickstein, P.L.L.C, to try to try to find out why his parole was rescinded and eventually denied. George Brown of that firm reached out to the Parole Board on June 15, 2020, to try to find out the "rationale behind that reconsideration" and to "review the documentation related to it." Ex. G, Letter Dated June 15, 2020.

Michael Eagen, Chairperson of the Michigan Parole Board, responded that a suspended hearing was conducted on February 17, 2020, and that the hearing notes summarize a discussion with Mr. Naser involving a Personal Protection Order issued against Mr. Naser by his wife. At that hearing Mr. Naser allegedly stated that he had to force his wife out of the house. Based on this information, Mr. Eagen stated that the Board decided Mr. Naser was a risk if released before completing a domestic violence program. Ex. H, Letter Dated June 25, 2020.

Mr. Brown responded to this letter with a further inquiry about the timing of this new information. Mr. Naser's parole was suspended on January 24, 2020, based on new information. Mr. Brown sought that specific information. Ex. I, Letter of July 7, 2020.

The Parole Board did not respond to this letter and Mr. Brown sent a follow up letter on August 10, 2020. In that letter he again stated his confusion regarding the new information that led to rescinding Mr. Naser's parole. The Parole Board's paperwork stated that they had received new information by January 24, 2020. Yet Mr. Naser's statement about having to force his wife out of the house occurred in February 2020, and the PPO was already known to the Parole Board. Ex. J, Letter Dated August 10, 2020. The PPO formed the basis of several of the original violations of Mr. Naser's parole.

Chairperson Eagen's only response to this was that Mr. Naser's next date for Parole reconsideration would be February 17, 2022, and that the Board would not reconsider its March 17, 2020, decision. Ex. K, Letter Dated October 22, 2020.

When ordered paroled, Mr. Naser was housed at Marquette Branch Prison. Soon after his psychological evaluation, he was moved to Newburry Correctional Facility. There he was eventually enrolled in the required domestic violence class.

Prior to his finishing the class, he was moved to Carson City Correctional Facility. He was not told why the move occurred. At Carson City he was not enrolled in a domestic violence prevention program. At his late 2021 parole hearing at that facility, he was told that he did not need the program and that he should stay out of

5

trouble. His parole eligibility was continued for one year. At his late 2022 hearing, he was again continued for one year.

On October 5, 2022, Mr. Naser was indicted in the Eastern District of Michigan in a two-count indictment. Count one charged Attempting to Providing Material Support to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1); and count two charged Felon in Possession of a Destructive Device, in violation of 18 U.S.C. § 922(g)(1).

While litigating a suppression issue in that case, Mr. Naser subpoenaed communications between the MDOC and the Federal Bureau of Investigations. In response to that subpoena, the MDOC revealed that on January 23, 2020, SA Jeffrey O'Donnell of the FBI emailed Chairperson Eagen a PDF presentation of what appeared to be a PowerPoint presentation of the type generally prepared for a grand jury. The PowerPoint outlined the evidence the FBI believed showed Mr. Naser was a terrorist. (**Sealed** Ex. L, Email and Attachment Dated January 23, 2020).

This email was sent two days after Chairperson Eagen sent his memo requiring that Mr. Naser undergo a psychological evaluation before being released and the day before the Parole Board Notice of Decision officially suspending Mr. Naser's parole. Notably, this email contained only an attachment with no body. This leads to the reasonable conclusion that SA O'Donnell and Chairperson Eagen had spoken about Naser before January 23, 2020, and that Chairperson Eagen was expecting this email.

6

## IV. THE ALLEGATIONS AGAINST AWS NASER

Mr. Naser's original indictment contained scant information regarding the factual basis for his charges. On July 9, 2024, a grand jury returned a second superseding indictment that detailed the allegations against Mr. Naser, at least regarding count one, providing material support to a designated foreign terrorist organization. This support is alleged to span from 2012 through October 30, 2017, when he was arrested for parole violations.

The indictment alleges that he provided material support and resources, "including personnel (including himself) and services to a foreign terrorist organization[.]" R. 162, Superseding Indictment, PageID. 1508. The indictment alleges that between September and December 2012, Mr. Naser discussed joining PERSON A (Russell Dennison) in Syria. Mr. Dennison claimed to Mr. Naser that he had joined the al-Nusrah Front.

In October and November, the indictment alleges that Mr. Naser searched the internet for various items and purchased some of those items (such as a cane sword). On November 7, 2012, Mr. Naser tried to fly from Iraq from Chicago but was not allowed to board the aircraft. He again tried to travel to the Middle East on January 2, 2013, but was again denied the ability to board the aircraft. Id. PageID. 1509-1510.

Mr. Naser then spent the next three years incarcerated from January 3, 2013, until March 2016.

In May 2016, Mr. Naser is alleged to have created a Telegram account and PalTalk account. He supposedly used these accounts to visit channels dedicated to the support of ISIS. In April 2017, he is alleged to have downloaded instructions regarding how to make explosives. He is alleged to have continued to view materials indicating a supportive view of ISIS.

On October 13, 2017, the FBI conducted a search of Mr. Naser's residence. In the home they found household chemicals, measuring cups, empty jars, gloves, a hobby glue gun, other hobby crafts, holiday lights, knives, the sword cane, drones, a BB gun, BB gun pellets, CO2 cartridges for a BB gun, and one round of .38 cal. ammunition.

The government alleges that many of these materials could be used to make an explosive device. However, five months after allegedly downloading the instructions, Mr. Naser had made no attempt to use his household chemicals to make an explosive device.

## V. THE STANDARD FOR RELEASE – 18 U.S.C. § 3142

In order to detain a defendant, the Government must prove that no conditions of release will reasonably assure the safety of the community or the appearance of the defendant. 18 U.S.C. § 3142(e). While this case gives rise to a rebuttal presumption of detention under 18 U.S.C. § 3142(e)(3), this presumption only requires that a defendant present some evidence that he does not pose a danger to the community or a risk or flight, it is not a heavy burden. *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010).

Once a defendant has presented some evidence in favor of release, the Government then retains the burden of persuasion. *Id.* The Government must prove a serious risk of flight by a preponderance of the evidence and dangerousness to the community by clear and convincing evidence. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

In making bond determination courts must review: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger that would be posed by the person's release. 18 U.S.C. § 3142(g).

> The nature and characteristics of the person include:
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

*Id.*

The weight of the evidence goes to the weight of the evidence of dangerousness, not the evidence of guilt. *Stone*, 608 F.3d at 948.

9

## VI.     APPLICATION OF 18 U.S.C. § 3142 TO AWS NASER

As evidence of his lack of dangerousness, Mr. Naser proffers to the Court that he was granted parole in January 2020. Moreover, in February 2020, he was evaluated by a Michigan Department of Corrections psychologist who found that he had developed pro-social thinking patterns, as well as realistic goals and plans for release.

As evidence he is not a risk of flight, Mr. Naser proffers that, as the Government has alleged in numerous filings, his primary goal is to expose what he feels is outrageous overreach by the FBI in his and similar cases. To do so he must and will go to trial. Further, he has no passport and is on the No-Fly list, making it nearly impossible for him to leave the county. Mr. Naser readily acknowledges that it is in his own interests to remain in the district.

Against this, the Government is likely to rely on their allegations that Mr. Naser was attempting to build an explosive device in his basement. While they may be able to show that he downloaded instructions to make a bomb, those instructions were allegedly downloaded five months before his arrest. At the time of his arrest, the only evidence he was actively building a bomb amounted to a collection of glass jars and his home containing a collection of household chemicals, many of which were in his basement, but some of which were in an upstairs closet and in the bathroom. This slapdash evidence offered by the Government is hardly enough to satisfy the clear and convincing standard.

Mr. Naser has served seven years on his two-year parole revocation because the FBI asked the Michigan Department of Corrections to hold him until after October 2022, a timeframe that corresponded with the expiration of the statute of limitations period for possession of a destructive device under 18 U.S.C. § 922(g)(1). (ECF 185, PageID.2116). This is unconscionable.

The Michigan Department of Corrections made an independent decision that Mr. Naser was appropriate for parole in January 2020. A month later their forensic psychologist confirmed this finding, yet he is still in prison because the FBI manipulated the parole process and hid this fact from Mr. Naser.

The Government alleges Mr. Naser repeatedly announced his support of the Islamic State and encouraged others to do so. The Government, the Court, and almost every citizen of this country may not like this, but it is his right under the First Amendment.

His alleged downloading of instructions for an explosive device is troubling but, even if true, it was one of many downloads of material from Islamic State websites made by Mr. Naser. The Government cannot show any concrete steps he took toward the construction of any destructive device. His continued detention rests on the Government's dislike for his convictions and his speech in support of those convictions. This violates the First, Sixth, and Eighth Amendments to the United States Constitution. To the extent this Court has continued concerns about Mr. Naser's online behavior, this Court can fashion conditions regarding Naser's use of electronic devices

and require that his devices contain monitoring software so that his activity online will be viewable by pretrial services and reportable to the court.

Mr. Naser's brother is willing to act as third-party custodian and has a safe, suitable home for Mr. Naser. The Court may require that Pretrial Services be allowed to search the home as part of his conditions of release and Mr. Naser can be made to wear a GPS tether. These conditions should overcome any lingering concerns the Court has about Mr. Naser's appearance.

## VII.   CONCLUSION

For the above stated reasons, this Court should enter an order releasing Mr. Naser with the condition he reside at his brother's home, that Pretrial Services be allowed to search that home, and that he participates in a location monitoring program. Further, the district court should enter an order under the All Writs Act directing the MDOC to release Mr. Naser as they have been acting as an agent of the federal government in their continued detention of Mr. Naser.

Respectfully submitted,

/s James R. Gerometta
Law Office of James R. Gerometta
27 E. Flint St., Suite 2
Lake Orion, MI 48362
313-530-9505

s/ Amanda Bashi
**FEDERAL COMMUNITY DEFENDER**
613 Abbott Street, Suite 500
Detroit, Michigan 48226
313-967-5542

Dated: October 7, 2024

## CERTIFICATE OF SERVICE

  I hereby certify that on October 7, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the parties of record.

             Signed,

             s/Amanda Bashi

Dated:  October 7, 2024