UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No. 22-cr-20504

v.

                            Honorable Jonathan J.C. Grey

AWS MOHAMMED NASER,

        Defendant.
_____/

**OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO ADMIT DEMONSTRATIVE VIDEOS OF EXPLOSIVES [ECF No. 217]**

The government seeks to introduce videos of an explosive device constructed by its FBI explosive experts (hereinafter "FBI video"[1]). The FBI video does not accurately replicate any real-world event that occurred, nor does it accurately replicate a device or even components of a device in Naser's possession. What the FBI video *does* show is that strict adherence to instructions provided in an Ibn Taymiyyah Media Center video (hereinafter "ITMC video") for constructing an explosive will indeed yield an explosion.

Importantly, there are substantial differences between the materials that the FBI experts used to build the device and the household chemicals found in Mr. Naser's home that the Government alleges were to be used to build an explosive device.

---

[1] Technically, the government seeks to introduce not one but six videos (Govt Exs. 1A through 1F provided to the Court). This brief refers to them in the singular for grammatical ease, but the record should reflect that Naser's opposes the entirety of Government's Exhibit 1 and all of its subsidiary videos.

1

Because of those substantial differences between the government's experiment and the evidence actually seized, the FBI video will distort the strength of the prosecution's case, confuse the jury, and ultimately inflict undue prejudice on Naser. The videos are not proper experimental evidence and are indeed prejudicial, and should thus be excluded.

### I. The videotaped experiments did not use substantially similar materials to the evidence as seized, thus failing the standard for admission as experimental evidence

The government asserts that the "replica" devices were constructed with materials "that were the functional equivalent to those law enforcement found in Naser's possession . . ." (ECF No. 217 at 2597-98.) Though the government bears the burden of proving this factual similarity, it glosses over discrepancies of the component materials in a footnote. The modifications are too great to be ignored, and the video evidence should be excluded.

The standard for the admission of experimental evidence—that is, evidence that recreates real-world events or conditions—is not so lax as the government insists. Such evidence is admissible only if "the conditions of the experiment were identical with or similar to the conditions of the transaction in litigation." *United States v. Baldwin*, 418 F.3d 575, 579-80 (6th Cir. 2005). If not perfectly identical, the experiment conditions should still be "nearly the same in substantial particulars" so as to "afford a fair comparison" on the issue being tested. *Burchfield v. CSK Transp. Inc.,* 636 F.3d 1330, 1336-37 (11th Cir. 2011) (quoting *United States v. Gaskell*, 985 F.2d 1056, 1060 (11th Cir.

2

1993)). Courts require the proponent of the evidence to first establish a "foundation" of substantial similarity. *See Cordero v. Stop & Shop Supermarket Co.*, No. 11 CIV.5701 BSJ, 2012 WL 5951280, at *1 (S.D.N.Y. Nov. 26, 2012) (collecting cases).

An experiment that "does not substantially replicate the circumstances and conditions of the event at issue, [ ] may unfairly prejudice the jury on a pivotal issue in in the case." *Cameron v. Teeberry Logistics, LLC*, No. 3:12-CV-181-TCB, 2013 WL 7874709, at *4 (N.D. Ga. May 21, 2013). This is particularly true with demonstrative results: a jury "might be so persuaded by its life-like nature that it becomes unable to visualize an opposing viewpoint of those events." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 425 (4th Cir. 1996).

It follows that courts routinely exclude demonstrative reenactments for lacking substantial similarity. *See Baldwin*, 418 F.3d at 580-81 (district court did not err in excluding video of reenactment where conditions "veered" from actual events); *Finchum v. Ford Motor Co.*, 57 F.3d 526, 530 (7th Cir.1995) (inadmissible demonstration of car seat crash tests was performed under conditions unlike those in actual accident); *Gaskell*, 985 F.2d at 1061 (expert demonstration of shaken baby syndrome was not sufficiently similar to circumstances of infant's death to be admissible); *United States v. Mayfield*, No. 17-20060, 2017 WL 3613972, at *2 (E.D. Mich. Aug. 23, 2017) (video reenactment of traffic stop "could have matched more closely" with the allegations and was inadmissible as a result).

3

Where "timing and physics" of an experiment are critical, courts should insist on "evidence of experiments that are conducted under nearly identical conditions as the actual event." *United States v. Jackson*, 479 F.3d 485, 489 (7th Cir. 2007). What could be more sensitive to timing and physics than a chemically manufactured explosive? Here, the FBI experts made such significant departures from the composition and quantity of the materials actually seized from Naser that the "replica" devices are anything but. They are independent creations, following instructions provided in the ITMC video.

First, the government's expert, a hazardous device examiner from the FBI, used chemical-grade precursor substances instead of the household substances taken into evidence from Naser's home (e.g.., pure acetone as opposed to Cutex Spa Formula nail polish remover). The government explains this modification as a safety precaution, but it is a convenient side effect that purer substances more reliably lead to the desired outcome of a chemical reaction. Moreover, the FBI report does not detail the formulas used to create AP and AN powder. It is thus impossible to compare the results of the FBI's experiments with what Naser could have purportedly created. Without a meaningful basis for comparison—let alone a high degree of factual similarity between the components—the reenactment does not provide sufficient probative value as to the allegations against Naser.

Another substantial modification by the FBI is the use of chemicals in a quantity sufficient to make TATP and APAN. Underlying this modification is the assumption that Naser possessed full containers of the component substances. The government

4

itself recognizes this assumption is not based in reality – remarking at an earlier bond proceeding that Naser would need to "acquire[] more of the raw ingredients, more of the acetone, more of the hydrogen peroxide," in order to construct the explosive devices depicted in the video. (ECF No. 195, Detention Hrg. Oct. 16, 2024, PageID.2333.).

The FBI video experiment also used physical, non-chemical components distinct from those found in Naser's home. For instance, the FBI did not use a crafting hot glue gun to hold the device together. The FBI did not use recycled glass pickle jars, 18 copper BBs and 2 hunting pellets as the projectile, but instead used a prefabricated "fragmentation sleeve", full of larger steel spheres and designed to nest neatly with the container holding explosive material.

Lastly, the FBI manufactured its devices in a controlled laboratory environment, a world away from Naser's cluttered basement that the government claims was really a bomb lab.

The government will likely respond that the FBI video substantially complied with the instructions from the ITMC video, and are thus admissible to show what Naser (or anyone) could have made if following the same instructions. But without laying a foundation that Naser did possess the "functional equivalents" of the materials used in the video, similarities between the FBI and ITMC videos are irrelevant. Proffered demonstrative evidence must have some probative value with respect to *Naser's* alleged conduct. As it stands, the FBI video veers too far from the materials and conditions

5

found in Naser's basement to be helpful to the jury. The government's video proves only that its experts could build a bomb by following instructions from the internet and without limiting themselves to the items in Naser's possession.

The cases cited by the government largely involve replicas of actual devices that were in fact already assembled. *See United States v. Jones*, 124 F.3d 781, 787 (6th Cir. 1997); *United States v. Spoeke*, 568 F.3d 1236, 1250 (11th Cir. 2009); *United States v. Cromitie*, 727 F.3d 194, 225 (2d Cir. 2013); *United States v. McNeil*, 106 Fed App'x. 294, 303 (6th Cir. 2004). Many of those defendants did not raise challenges to the substantial similarity of the replica, so the issue was not presented in those cases as it is here. *See, e.g., id.* ("[D]efendants have not come forward with any evidence to indicate that the conditions depicted in the video [of the replica bomb] were not substantially similar to those [at the scene]."). The government cites *United States v. Pearce*, 86 Fed. Appx. 919 (6th Cir. 2004), an unpublished order, as authority for the admissibility of a reenactment showing the explosive capacity of unassembled materials. *Pearce* contains no discussion, though, of the composition of the replica device or even of the admissibility of such a replica. The order remarks only that an expert had "created replica devices of the pipe segment, and detonated them." *Id.* at 921. *Pearce* offers this Court no guidance about the evidentiary question at hand.

Here, meanwhile, the basic contention that the FBI's devices are replicas is confusing and downright questionable. To call the devices "replicas" implies that they are replicating the criminal offense here. Really, what the FBI video shows is, at best, a

6

replication of the ITMC video's purported final product. But what Naser had in his possession is materially different from what the ITMC instructions dictate. When an expert's experiment "stray[s] too far from the real-world conditions" at issue, the experiment cannot be said to "fit" the facts of the case. *Varner v. Dometic Corp.*, No. 16-22482-CIV, 2022 WL 2307002, at *4 (S.D. Fla. Mar. 25, 2022). Such is the case here. The FBI's experiments were made possible by the government's theoretical and factual leaps– leaps between the potency and quantity of chemicals in Naser's basement versus those the FBI used, and between the physical components and tools Naser had versus those the FBI procured. Those leaps make the FBI's devices flawed exemplar. The FBI video should be excluded as a result.

## II. The prejudicial effect of the video outweighs its limited probative value

If the Court finds any probative value in the FBI's video replicas of the ITMC video, that value is overwhelmed by their unfairly prejudicial effects.

Most importantly, the FBI videos stand to confuse the jury as to what actually happened – which chemicals and components were recovered from Naser versus what the ITMC video called for, and whether a bomb was actually constructed or detonated. The explosions will serve to shock and inflame the jury, distracting them from the many dissimilarities between Naser's conduct and available resources and the FBI's successful experiment. .

7

Naser can only combat the demonstrative videos with an absence of evidence and in the hypothetical, arguing that Naser never created such a device nor did he attempt to. Yet for lay jurors, viewing an explosion that did occur on video is much more compelling evidence than something that never happened. That is because demonstrative exhibits leave a "particularly potent image in the jurors' minds." *Gaskell*, 985 F.2d at 1061 n. 2; *see also United States v. Wanoskia*, 800 F.2d 235, 237-38 (10th Cir. 1986) (explaining that a court "must take special care to ensure that [a] demonstration fairly depicts the events at issue" because demonstrative evidence is highly persuasive). The government itself recognizes that "[j]urors remember what they see far better than what they only hear." (ECF No. 217, PageID.2609.) That fact is even more true with respect to videos of explosives which arouse "fear and a sense of horror in the jury." *United States v. Varnell*, No. CR-17-239-D, 2019 WL 458404, at *2 (W.D. Okla. Feb. 5, 2019); *see also United States v. Austin*, No. 15-20609-12, 2018 WL 8807176 (E.D. Mich. Apr. 25, 2018) (cutting short video of explosion so as to not shock the jury).

The FBI videos are also cumulative with respect to the testimony of the governments' experts. Evidence, even if relevant, may be excluded if its probative value is substantially outweighed by a danger of cumulative evidence. Fed. R. Evid. 403. The government's experts may testify as to the explosive capacity of certain substances or the result of the instructions in the ITMC video. Yet the government does not adequately explain why video reenactments are necessary on top of that testimony. *See Varnell*, 2019 WL 458404, at *2 (excluding video of FBI test detonation when agent

8

could testify "regarding the same process."). The videos themselves are also duplicative, showing the same explosion from multiple angles and in slow-motion. Studies show, in fact, that jurors impute more intent to a criminal a defendant when they view video evidence in slow motion.[2] And here, the FBI video is not evidence of anything more than the FBI's ability to build a bomb following the precise instructions provided in the ITMC video – without proof that Naser ever did the same, or had the means to.

All told, the risk of unfair prejudice from the videos is extreme. The jury will not be able to unsee the mushroom clouds manufactured by the FBI. During the hours of substantive testimony from experts and witnesses alike, jurors' minds will inevitably wander to the videos of physical destruction ascribed to Naser, and they will bring these mental images into the jury room. The Court should prevent the videos from overshadowing the legitimate issues in the trial, and allow Naser a fair chance to expose the weaknesses in the government's physical evidence. With the FBI videos in play, though, that challenge will be unduly harder to mount.

## CONCLUSION

WHEREFORE, Mr. Naser respectfully requests that the Court deny the government's motion to admit the demonstrative videos.

---

[2] Beth Mole, *People look guiltier when their actions are viewed in slow motion*, Ars Technica (Aug. 6, 2016), https://arstechnica.com/science/2016/08/jurors-perceive-more-intent-when-they-watch-videos-in-slow-motion/.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**

s/ Amanda N. Bashi
AMANDA N. BASHI
RIYAH BASHA
Attorneys for Mr. Naser
613 Abbott Street, Suite 500
Detroit, Michigan 48226
(313) 967-5845
E-mail:  amanda_bashi@fd.org


s/James R. Gerometta
**Law Office of James R. Gerometta**
27 E. Flint St., Suite 2
Lake Orion, MI 48362
313-530-9505

Dated: February 26, 2025