UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          CR. NO. 22-20504

v.                                           Hon. Jonathan J.C. Grey

AWS NASER,

        Defendant.
_____/

## DEFENDANT'S MOTION IN LIMINE TO EXCLUDE PORTIONS OF HASSAN HASSAN'S TESTIMONY AT TRIAL

Aws Naser moves, *in limine*, for an order to exclude portions of Hassan Hassan's testimony at trial pursuant to FRE 702, FRE 704(b), and FRE 403. These exclusions include Hassan Hassan's testimony about 1) the knowledge and ideology a person who watched the videos recovered from Naser's personal electronic devices could hold; 2) the ideology and commitment to ISIS of someone who would write the statement found on the index cards taken from Naser's home; and 3) when ISIS would consider someone committing an attack, following a call to action from ISIS, as doing it on their behalf.

Hassan does not have the knowledge and experience required to provide principled analysis of an individual's knowledge, ideology, or personal commitment to ISIS.

1

Additionally, the narrowly tailored opinion he plans to offer violates Rule 704(b)'s prohibition of expert testimony about a defendant's mental state, where that mental state constitutes an element of the offense. The testimony Hassan plans to offer about knowledge exemplifies a 704(b) violation the Supreme Court recently considered in *Diaz*. *Diaz v. United States*, 602 U.S. 526, 535-36 (2024).

The government should also provide more detail regarding what testimony about "general terrorism slang and jargon" it intends to elicit from Hassan. It is unclear what is meant by general terrorism slang and jargon. Without more information, it is impossible to determine if the testimony the government seeks to elicit is properly supported by expert opinion.

Finally, Hassan's opinions relating to ISIS's 2017 call to action impermissibly stretch the relevance requirement of FRE 702 and create a substantial danger of unfair prejudice for the jury.

In the alternative, this Court should hold *Daubert* hearing to determine if Hassan is qualified to give these opinions.

Pursuant to Local Rule 7.1, the government does not concur.

## BRIEF IN SUPPORT

## BACKGROUND

On February 24, 2025, the government identified Hassan Hassan as an expert witness. In the Rule 16 disclosure, the government explained Hassan was sent a series of videos and chats to review, and then was asked to provide an opinion on "a person who would have sought out and watched those videos and participated in those chats without being provided any other information on the person." (Gov't Rule 16 Disclosure, Hassan Hassan). The government identified those videos and chats as part of the discovery previously disclosed to Naser, meaning they were among those videos and chats recovered from Naser's personal electronic devices. (*Id.*). Hassan plans to testify about "the knowledge and ideology that a person who watched those videos could hold." (*Id.*).

Hassan was also given a set of index cards to review. (*Id.*) Naser believes the government is referring to the two index cards identified by former MDOC parole officer and Joint Terrorism Task Force operative Charles Wright. (ECF No. 170, Evidentiary Hearing Tr., PageID.1704-05). Charles Wright photographed these index cards without Naser's knowledge after Wright thought he potentially recognized the words "Islamic State" on them (*Id.* at 1708). Wright identified these two index cards first during the May 19, 2017 visit to Naser's home, then again during the August 16,

1

2017 visit. (*Id.* at 1696, first visit, 1704, identification, 1714, second visit, 1720, identification). The government has asked Hassan to explain the statement captured on those index cards and "opine on the ideology and commitment of someone who would write that statement." (Gov't Rule 16 Disclosure, Hassan Hassan).

Hassan also plans to testify about when ISIS would consider someone committing an attack, following a call to action by ISIS in 2017, as doing it on their behalf. (*Id.*). Naser has not been charged with planning or committing an attack. (*See e.g.*, ECF 162, *Second Superseding Indictment*).

Finally, Hassan will testify about "general terrorism slang and jargon."

## ARGUMENT

**I.      Hassan's opinions about the knowledge, ideology, and commitment to ISIS a person who viewed the material at issue could have are not sufficiently reliable under FRE 702 and must be excluded.**

This Court serves an essential gatekeeping function under FRE 702 to ensure that expert testimony is both relevant and reliable. *Ask Chems., LP v. Computer Packages, Inc.*, 593 F. Appx 506, 509 (6th Cir. 2014) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993)). This gatekeeping function applies even where the expert's opinion is "technical," rather than scientific, in nature. *Id.* at 509 (citing *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 141 (1999)). When an expert's testimony "is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is too great an analytical gap between the data and the opinion proffered." *United States v.*

2

*Reynolds*, 626 Fed.Appx. 610, 614 (6th Cir. 2015) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) (internal quotations omitted).

Hassan's opinions about the knowledge, ideology, and commitment to ISIS a person could have will not be the product of reliable principles and methods because Hassan does not have the knowledge and experience required to make reliable assessments about individual mental states. *See* FRE 702(c).

Hassan plans to testify "about the knowledge and ideology that a person who watched the videos [from Naser's devices] could hold." (Gov't Rule 16 Disclosure, Hassan Hassan). Hassan's educational background is in English literature and international relations. (Gov't Rule 16 Disclosure, Hassan Hassan). Hassan's professional background is focused on research and publications about Islamist militant organizations. (*Id.*). Hassan's research appears to be focused on ISIS as an organization and its functioning and history, not on the psychology of its individual members.

Hassan's research may provide helpful background information to the jury about group development and history, identifying group features, and with the proper foundation, perhaps also group behavior. However, no part of Hassan's knowledge and experience lends itself to principled analysis about the mental state of a particular individual.

When considering an expert's qualifications, courts consider "whether the qualifications 'provide a foundation for a witness to answer a specific question,' as opposed to considering his or her qualifications in the abstract." *Burgett v. Troy-Bilt, LLC*,

3

579 F. App'x 372, 376 (6th Cir. 2014) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). The government must prove Hassan's qualifications by a preponderance of the evidence. *Id.* (citing *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008)). Nothing in the government's disclosure demonstrates that Hassan is sufficiently qualified to provide opinions about an individual's ideology based on their media consumption that would be the product of reliable principles and methods.

It is unclear if any expert could have sufficient background to provide the speculative testimony that the government wishes Hassan to give.

To illustrate this, consider everyone who has viewed the videos at issue in this case: government counsel, state and federal investigators, defense counsel, defense investigators, and potential experts like Hassan himself. It is doubtful that Hassan plans to testify with any of these individuals in mind, but any one of them could fill in for the unknown person Hassan will testify about.

Even outside the professional contours of this case, certainly there are others, such as Billy Reily, who have a significant interest in terrorist groups, but may not necessarily be interested in joining a specific group or of providing that group with material support.

Surely the range of possible knowledge and ideologies among these individuals is significant. That any of these individuals could fill in for Hassan's unidentified person and materially change his ability to assess their knowledge and ideology means Hassan's opinions in this area are no more than inadmissible speculation. Testifying about

4

opinion alone contravenes the logic underpinning FRE 702. *See* FRE 702, Notes of Advisory Committee on Proposed Rules ("Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded."). Without more supporting his assertions, Hassan's opinions in this area are unreliable and cannot be admitted.

Hassan's review of the index cards recovered from Naser's home raise similar concerns. Again, Hassan does not have the qualifications required to assess an individual's ideology and commitment based on their media consumption or writing.

> II. **Hassan's opinions on the knowledge, ideology, and commitment to ISIS a person could have, based solely on materials recovered from Naser's home, constitutes an impermissible opinion of Naser's mental state in violation of FRE 704(b).**
>
> A. **As an element of 2339B, knowledge is an ultimate issue reserved for the jury subject to the restrictions of FRE 704(b).**

Naser is charged with 18 U.S.C. § 2339B(a)(1) in Count One. (ECF 162, PageID.1508). To meet their burden, the government must prove that Naser not only knew ISIS was a designated foreign terrorist organization at the time he engaged in the alleged material support, but also that Naser knew he was providing material support or resources to ISIS. 18 U.S.C. § 2339B. There is no dispute that knowledge is an element of Count One. (ECF 288, *gov't trial brief*, PageID.2840).

Rule 704(b) applies to a narrow set of opinions, but this is one of them. Rule 704(b) prohibits "expert opinions that are about a particular person ('the defendant') and a particular ultimate issue (whether the defendant has a 'mental state or condition'

5

that is 'an element of the crime charged or of a defense')." *Diaz v. United States*, 602 U.S. 526, 534 (discussing FRE 704(b)). As both a mental state and an element of § 2339B, any expert opinion offered about Naser's knowledge is subject to the restrictions of 704(b) and must be excluded.

### B. Hassan's testimony, based solely on materials recovered from Naser's home, necessarily goes beyond a general reference and will result in Hassan reaching a particular conclusion about an element of the offense.

Hassan's testimony about the knowledge, ideology, and commitment to ISIS a person could have, both in reference to the videos and the index cards Hassan was asked to review, is the impermissible case the Supreme Court recently considered in *Diaz*. *Diaz v. United States*, 602 U.S. 526, 535-36 (2024). In *Diaz*, the Supreme Court described a hypothetical example where an arson expert testified that all people in defendant's shoes set fires maliciously. *Id.* "Although the expert never spoke the defendant's name, the expert nonetheless violated Rule 704(b). That is because the expert concluded that the defendant was part of a group of people that all have a particular mental state." *Id.* at 536. Here, the problem is not that Hassan is providing an opinion about a mental state shared by a group of people, but that he is providing an opinion about a mental state shared by a group composed of only one person, Naser. By offering an opinion about a mental state shared by all or just one, Hassan necessarily "state[s] an opinion on the defendant's mental state, an ultimate issue reserved for the jury, in violation of Rule 704(b)." *Id.*

6

Hassan was asked to review a particular set of videos and provide an opinion on the knowledge and ideology the person who watched those particular videos could hold. (Gov't Rule 16 Disclosure, Hassan Hassan). Hassan was not asked to provide a general opinion about the kinds of people who watch those videos, nor was he given a broad range of materials to review in forming his opinion. No. Hassan reviewed a subset of materials sourced directly from Naser's personal devices, a subset of materials that only Naser has been alleged to have collectively viewed. The person Hassan seeks to discuss in the abstract can be none other than Naser, as the government has asked Hassan to follow a path only Naser has tread in creating his opinion.

Similarly, the index cards Hassan was asked to review and provide an opinion on were found in Naser's home. (ECF No. 170, *Evidentiary Hearing Tr.*, PageID.1704-05). The government alleges that Naser wrote the statements found on those index cards. Hassan's testimony about the ideology and commitment to ISIS of someone who would write one of those statements is not an abstract reference, but is referring directly to Naser, the alleged writer. While the Rule 16 disclosure about the index cards does not specifically speak to knowledge, asserting someone's "commitment to ISIS" necessarily implies that person had knowledge of ISIS. One cannot have commitment to something they do not know about.

Rule 704(b) requires "more than a general reference, and it must reach a particular conclusion." *Diaz* at 536-37. Hassan's testimony cannot be considered a general reference if it is based solely on materials Naser possessed or is alleged to have

7

created. Hassan's testimony will also invariably reach a particular conclusion, which means only that he provides an opinion. *Id.*; *See* Black's Law Dictionary 1244 (rev. 4th ed. 1968) (defining opinion evidence as "what the witness thinks, believes, or infers in regard to the facts in dispute"). Hassan's assessment of the knowledge, ideology, and commitment to ISIS a person has based on evidence in this case is an opinion, one that reaches a particular conclusion about Naser's knowledge and is therefore the target of the 704(b) exception.

### III. Hassan's opinion about when ISIS would consider an attack as being carried out on their behalf should be excluded under FRE 702 and 403.

Hassan intends to testify about "ISIS's call for attacks in the West around 2017." (Gov't Rule 16 Disclosure, Hassan Hassan). He will further explain "when ISIS would consider someone committing an attack following that call as doing it on their behalf." (*Id.*). These opinions stretch what Rule 702 permits Hassan to testify to given the factual issues of this case. Rule 702 requires expert testimony to "help the trier of fact to understand the evidence or to determine a fact in issue." What ISIS would consider being done on their behalf is irrelevant to any issue the jury must determine.

Moreover, the fact that ISIS may embrace any hypothetical attack is overly prejudicial to Mr. Naser. In *United States v. Anawi*, 541 F.Supp.2d 945 (N.D. Ohio, 2008), the district court excluded testimony regarding the origin of video the defendant watched, finding that allowing the jury to hear that the video was produced by Al-Queda would be too prejudicial.

8

> Few terms have a greater inherent risk of prejudgment than terrorism, terrorist, jihad, and Al-Quaeda. To permit the jury to learn who may have produced and disseminated the materials that they will be viewing, and what their putative purpose might be-even though voir dire made clear that accessing, downloading, and viewing such materials was not unlawful-could manifestly color their ability to weigh the evidence objectively.

*U.S. v. Amawi*, 541 F.Supp.2d 945, 951 (N.D. Ohio 2008)

The Government's attempt to admit this testimony is an end run around the obvious problem with their case, that there is no evidence that Mr. Naser attempted to provide material support to any organization after his 2013 incarceration. Even if the Government proves that Mr. Naser was building a bomb, and then convinces the jury that he was contemplating detonating the device in the name of ISIS, this explicitly does not constitute material support under the statute, which states that:

> (h) Provision of Personnel.—
>
> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. 2339B.

Whether ISIS would consider any attack in the United States as being done on its behalf is irrelevant. The statute requires that the activity be done under the

9

organization's direction or control. "Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." *Id.* Hassan's testimony that ISIS would consider any attack done as being performed on its behalf is irrelevant and a deliberate attempt to confuse the issue of ISIS's belief and the objective question of whether the hypothetical attack was to be done under ISIS direction or control, or would have been an independent action to advance ISIS's goals or objectives.

**IV.    The Government must explain what they mean by general terrorist slang and jargon.**

The defense is concerned about the content of Hassan's testimony regarding terrorist slang and jargon. This testimony may be entirely proper and helpful to the jury. On the other hand, it could allow Hassan to speculate on the meaning of otherwise innocuous terms and phrases used in communications and imbue them with some sinister meaning in a way both unduly prejudicial and not supported by any evidence.

The Court should order the government to provide a list of the slang and jargon Hassan will testify about so that it can be reviewed to see if his interpretations are appropriately supported.

10

## CONCLUSION

For the reasons set forth above, Naser respectfully asks the Court to find the identified portions of Hassan Hassan's proposed testimony inadmissible and grant his motion to exclude those areas of testimony at trial.

In the alternative, he asks for a *Daubert* hearing to determine if he is qualified to give the above proffered opinions.

                                                         Respectfully Submitted,

                                                         **FEDERAL COMMUNITY DEFENDER**

                                                        s/ Amanda N. Bashi  
                                                        AMANDA N. BASHI  
                                                        RIYAH BASHA  
                                                        Attorneys for Mr. Naser  
                                                        613 Abbott Street, Suite 500  
                                                        Detroit, Michigan 48226  
                                                        (313) 967-5845  
                                                        E-mail: amanda_bashi@fd.org


                                                        s/ James R. Gerometta  
                                                        Law Office of James R. Gerometta  
                                                        27 E. Flint St., Suite 2  
                                                        Lake Orion, MI 48362  
                                                        313-530-9505

Dated: April 3, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the parties of record.

Signed,

s/James R. Geromtta

Dated: April 3, 2025