UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,                          CR. NO. 22-20504

v.                                       Hon. Jonathan C. Grey

AWS NASER,

                  Defendant.

---

**DEFENSE REPLY TO GOVERNMENT'S RESPONSE OPPOSING NASER'S MOTION TO EXCLUDE TESTIMONY FROM GOVERNMENT'S EXPERT CHEMIST & BOMB TECHNICIAN**

---

The Government's response confuses validity of weight for scientific validity of using density as a proxy for concentration. While the government provided robust support for the fact that the FBI's weight, density, and Raman measures were accurate – things the defense did not dispute – the government still has provided no support for the key issue Naser's motion raised: density is not a scientifically valid substitute for concentration.[1] The government cannot provide this support because its own expert

---

[1] The government's brief makes the following statement, without support or citation: "Measuring a liquid's density to estimate concentration has long been recognized within the scientific community as an efficient, reliable, and valid scientific technique." (ECF No. 260, PageID.3218.) Similarly, the government offers some error rates in its footnote 1, without citation. Reading those error rates closely appears to indicate the error rate of the density measurement. That is not at issue in this motion.

1

acknowledged that density measurement is not a valid measure of concentration. What the expert does not spell out, is that this is a particularly invalid measure where the substance is not known. The government response itself acknowledges that a validated quantitative method was not used to measure concentration. (Govt Resp., ECF No. 260, PageID.3222.)

The government also recognizes that there are other – actually valid – means for measuring concentration: titration and Ion Chromatography.  We know the FBI was capable of using at least one of these methods, because they used Ion Chromatography on other substances in this very case. But the FBI did not use either of these methods to measure the concentration of hydrogen peroxide in Item 8. Ion Chromatography does not require an unusually large sample size. Neither the Chemist's documents nor the government's response inform as to why not – a significant question where the FBI's "chemistry division, in particular, is one of the best forensic chemistry laboratories in the world." (Gov't Resp., ECF No. 260, PageID.3213.)

The data and publications the government does cite in support of density-as-concentration measures only apply where a substance is *known* – meaning the lab is aware of its contents. Here, that was undisputedly not the case. The government acknowledges there were no markings on the bottle, and the fluid "wasn't in a hydrogen peroxide brown bottle you might get from CVS, it was in a squirt bottle, in a plastic tube bottle." (ECF No. 199, PageID.2413.)  Discovery contains no indication that the fluid was tested for the presence of other substances. Yet, the presence of any other

clear substances within the fluid could impact density. (Exhibit A – Ethan Groves Statement.) This is the primary reason density as a proxy for concentration is not a valid quantitative measure when the substance is not a known sample:

> There are numerous factors that can influence the accuracy of a concentration value determined by this method. Notably, in the case of an unknown sample the presence of multiple components in the liquid. The FBI analysis assumes that the unknown liquid was only composed of water and hydrogen peroxide, but there is no evidence that the liquid was screened to determine if other components may have been present.

(Exhibit A, para. 8.)

The concentration of hydrogen peroxide in Item 8 is a critical aspect of this case. The government's response belies what its experts have done and the arguments it has made and will make at trial: that the liquid in Item 8 "was in a very, very pure form. In other words, it had already been processed to be very highly pure. And that's what [our] expert witnesses would testify about."[2] ECF No. 199, PageID.2413 (Hr'g on Appeal of Det. Order, Nov. 5 2024.) The government will argue (and has argued, see *id.*) that Naser himself concentrated it. By contrast, the government's response here falsely belittles the relevance of the concentration of hydrogen peroxide in the fluid, arguing that "exact quantification is not required when manufacturing TATP." The problem with this argument is that it assumes as fact something the government is required to

---

[2] Notably, at the time of that hearing (November 2024) the defense had not yet been provided the discovery regarding Parrott's density-concentration measurement – let alone, the faulty one. As such, defense had no ability to counter or contest that information.

prove to the jury – and one way they're going to prove it is through eliciting testimony and making argument about the concentration of Item 8.

"Multi-factor tests, especially non-exhaustive tests [like *Daubert*], run the risk of obscuring the core inquiry." *United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021). "The key handholds of Rule 702 thus bear repeating: To be admissible, any relevant scientific or technical evidence must be the 'product of reliable principles and methods' and must have been 'reliably applied' in the case." *Id.* Here, even the government's own expert concedes the density measurement as a proxy for concentration is an estimate and not one based on validated scientific principles. The method is an unreliable one because it is not validated. This is precisely the kind of evidence the Court in *Daubert* and the Sixth Circuit require district courts to exclude in their "gatekeeping role." *Id.*

The *Daubert* factors support exclusion. First, Parrott's method is not a testable scientific theory. *Gissantaner*, at 464 (citing *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). Parrot confirmed there was hydrogen peroxide present in the unidentified clear liquid and took no further steps to rule out the presence of other substances. Parrott then took a density measurement and used it as a proxy for concentration, an estimate "not based on a validated quantitative method." (ECF 238, PageID.3028). There is no way to show Parrott's process works "(its 'refutability' or 'falsifiability,' a scientist would say) and no way to give it 'scientific status.'" *Gissantaner*, at 464 (citing *Daubert*, at 593; *United States v. Bonds*, 12 F.3d 540, 559 (6th Cir. 1993)). This is not the kind of "grist for adversarial examination" that it admissible under Rule

702. *Id.* (citing *Bonds*, at 558-59). Parrott's methods go beyond a discussion of adequacy, crossing into unsupported and unreliable estimation.

Second, implicit in Parrott's acknowledgement that his density as a proxy for concentration is an estimate based on unvalidated methods is the conclusion this method has not been peer reviewed. If Parrott's methods were published in peer-reviewed journals, *See Daubert* at 594, or had been "submitted to the scrutiny of the scientific community," then the government would certainly have included that information in its response. *Gissantaner*, at 464 (citing *Bonds*, at 559).

Third, and touched on briefly already, no error rates (also called "uncertainty") or standards to lower those error rates were provided for Parrott's concentration estimate based on density. See *Gissantaner*, at 465. The error rates the government mentions in its response are uncited and appear to relate to the density measurement—i.e., the ability to weigh the substance and calculate density from weight. (ECF 260, PageID.3212). Naser does not have reason to believe FBI chemist Parrott cannot accurately weigh something and calculate density. The real error rate that matters is the one for using density as a proxy for concentration of an unknown substance. But there won't be an error rate for that, because it's not a valid quantitative measure. And there won't be an uncertainty for it either, which is critical:

> The lack of uncertainty in forensic data was called out as a shortcoming by the National Research Council in their report on forensic science. Furthermore, NIST (the National Institute of Science and Technology) states that a quantitative measurement provided without an associated uncertainty is indicative of an incomplete measurement: "A measurement

result is complete only when accompanied by a quantitative statement of its uncertainty."

(Ex. A, Groves Statement, para. 9 (internal citations omitted).)

Finally, and also implicit in Parrott's admission, the method of using density as a proxy for concentration has not gained general acceptance in the scientific community. *See Gissantaner*, at 466. Again, the support the government provides in its response for density as a proxy for concentration is for when the substance is known. None of the *Daubert* factors, or general scientific principles, support such a calculation based on an unknown liquid in an unlabeled bottle.

The defense has separately briefed another problem with Item 8: it no longer exists. The Court should not allow Parrott to testify about a faultily measured concentration, when Naser sought to do his own validated measure but could not – through no fault of his own.

For the reasons set forth in the original motion, and those stated above, the record is presently developed enough for this Court to exclude Parrott and Rigopolous' testimony regarding the concentration of hydrogen peroxide in Item 8. Should the Court need further information, a hearing should result in a similar resolution.

Respectfully submitted,

/s James R. Gerometta
Law Office of James R. Gerometta
27 E. Flint St., Suite 2
Lake Orion, MI 48362
313-530-9505

6

s/ Amanda Bashi
/s Riyah Basha
**FEDERAL COMMUNITY DEFENDER**
613 Abbott Street, Suite 500
Detroit, Michigan 48226
313-967-5542

Dated:  April 21, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the parties of record.

Signed,

s/Amanda Bashi

Dated:  April 21, 2025

7