# EXHIBIT A

**<u>Statement of Ethan Groves</u>**

*United States v. Aws Naser*

1. My name is Ethan Groves. I am a Senior Research Microscopist at Microtrace LLC ("Microtrace"). I have been a microscopist there for 13 years and served prior to that as a laboratory technician for four years.

2. Microtrace is accredited to ISO/IEC 17025 by the American Association for Laboratory Accreditation (A2LA), and is FDA registered (FDA 3008998904), DEA registered (schedules 1, 2, 2N, 3, 3N, 4, 5), licensed for explosive manufacturing and storage by the ATF, and cGMP compliant. As such, when evidence is received at Microtrace LLC for analysis, evidence is processed using Microtrace's quality management system and adherence to the current standards of scientific practices and ethics.

3. Microtrace was retained by the defense team for Aws Naser to test one sample (FBI labeled "Item 8"). Specifically, our laboratory was retained to analyze Item 8 to determine the presence and concentration of hydrogen peroxide within the liquid. Testing would specifically include a microchemical screening for peroxide followed by derivatization and analysis by ultraperformance liquid chromatography with diode array detection (UPLC-DAD).

4. Microtrace received Item 8 from the FBI on March 28, 2025. Item 8 was received at ambient conditions and was stored in the same manner.

5. On April 07, 2025, I opened Item 8. The exterior packaging consists of a translucent, white plastic jar labeled: "I8 | 2017-03374 inside | RP 3/24/2025." The jar was sealed with evidence tape. Within the jar was a bag with an FBI evidence label for this exhibit and sealed with the initials "RP". Within that bag was a second, smaller bag also sealed with the initials "RP". Neither bag was labeled with the dates it was sealed, and both appear to have been sealed three separate times by "RP." Within the inner bag was an unlabeled colorless scintillation vial. Each level of packaging, including the final innermost container that held the analyte, was photo-documented as it was unpackaged.

6. Upon examining the contents of Item 8, I observed that there was almost no liquid within the vial. The observed liquid was observed to be pooled around solid particles and residues within the vial. I would estimate the total liquid volume to be less than 40 μL. I also observed that the inside of the lid on the vial had deteriorated suggesting the contents of Item 8 may have been compromised prior to its arrival at Microtrace.

7. The lack of remaining liquid in Item 8 means that I cannot perform the planned tests to ascertain the concentration of hydrogen peroxide within the sample. Furthermore, given

the observed degradation of the cap interior, the results of any such analyses would be challenging to interpret as it is unknown what if any evaporation of Item 8 has occurred. Therefore, Item 8 as received at our laboratory is unsuitable for a quantitative determination of its hydrogen peroxide concentration.

8. I have reviewed the FBI laboratory report regarding the determination of hydrogen peroxide concentration in Item 8.  The FBI report utilizes density as a method to determine the concentration of hydrogen peroxide.  There are numerous factors that can influence the accuracy of a concentration value determined by this method. Notably, in the case of an unknown sample the presence of multiple components in the liquid.  The FBI analysis assumes that the unknown liquid was only composed of water and hydrogen peroxide, but there is no evidence that the liquid was screened to determine if other components may have been present. Additionally, a factor such as evaporation would change the density (and thus concentration of the analyte). Without additional information regarding sample condition upon receipt at the FBI laboratory compared to when it was originally seized and the time between receipt and analysis, the potential impact of evaporation is unknown for quantification by density.

9. Finally, the reported hydrogen peroxide concentration value was presented without an uncertainty. The lack of uncertainty in forensic data was called out as a shortcoming by the National Research Council in their report on forensic science.[1]  Furthermore, NIST (the National Institute of Science and Technology) states that a quantitative measurement provided without an associated uncertainty is indicative of an incomplete measurement: "A measurement result is complete only when accompanied by a quantitative statement of its uncertainty."[2]

April 21, 2025

---

[1] National Research Council. 2009. Strengthening Forensic Science in the United States: A Path Forward. Washington, DC: The National Academies Press. https://doi.org/10.17226/12589.
[2] Taylor and Kuyatt (1994) Guidelines for Evaluating and Expressing the Uncertainty of NIST Measurement Results NIST Technical Note 1297